**YOURMAN, et al., Plaintiffs,**

v.

**DINKINS, et al., Defendants.**

**No. 91 Civ. 2197 (LAP).**

United States District Court, S.D. New York.

July 12, 1993.

Joan Stern Kiok by Joan Stern Kiok, Robert N. Felix, New York City, for plaintiffs.

O. Peter Sherwood, Corp. Counsel of City of New York by Marilyn Richter, Patricia B. Miller, New York City, for defendants.

## OPINION AND ORDER

PRESKA, District Judge.

Plaintiffs are employees of the City of New York (the "City"), the New York City Health and Hospitals Corporation (the "HHC"), and the Board of Education of the City School District of the City of New York (the "BOE") who have been designated as "managerial" employees by their respective employers.

They bring this action pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–19 (1988), seeking unpaid overtime compensation at time and one-half their regular rate of pay for all hours worked in excess of forty hours each week. *See* 29 U.S.C. § 216(b).[1]

Additionally, plaintiffs whose regular work week is thirty-five hours seek overtime compensation at their regular rate of pay for all hours worked between thirty-five and forty hours each week pursuant to Administrative Code of the City of New York § 12–108.[2]

Before the Court are the parties' cross-motions for summary judgment. The Court finds, as each of the parties maintains, that no genuine issue as to any material fact concerning liability exists; the Court's task is therefore to apply the law to the facts before it. *See Martin v. Malcolm Pirnie, Inc.,* 949 F.2d 611, 614 (2d Cir.1991), *cert. denied,* — U.S. —, 113 S.Ct. 298, 121 L.Ed.2d 222 (1992). As to the FLSA claim, the Court finds that plaintiffs are not exempt from the overtime compensation provisions of FLSA and therefore grants plaintiffs' motion and denies defendants' motion as to FLSA liability. As to the state claim, the Court finds that plaintiffs do not meet the requirements of § 12–108 and therefore grants defendants' motion and denies plaintiffs' motion as to that claim. Only the issue of damages under FLSA remains to be settled in this action.

### I. *Defendants' Time and Leave Regulations*

Central to this action are the written time and leave regulations applicable to plaintiffs issued by the City ("City Regs."), the HHC ("HHC Regs."), and the BOE ("BOE Regs."). These regulations specify a minimum work week of thirty-five hours, and the City and the BOE regulations expressly require employees to work any additional hours and days necessary to carry out their responsibilities. City Regs. § 3.0; HHC Regs. § 1.0(B)(1); BOE Regs. § 4(a).[3] The regula-

---

[1]. Plaintiffs also seek liquidated damages and reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b) and declaratory relief pursuant to 28 U.S.C. §§ 2201–02.

[2]. The Court has subject matter jurisdiction over this state claim pursuant to 28 U.S.C. § 1367.

[3]. Plaintiffs in uniformed service, *e.g.,* Administrative Fire Marshals and General Superintendents (Sanitation), work forty-hour weeks but are oth-

tions do, however, provide some flexibility for employees to vary, with supervisor approval, the hours worked on a given day in order to compensate for unusually long hours worked in a certain period, two weeks for the City and the BOE and one week for the HHC. City Regs. § 3.0; HHC Regs. § 1.0(C)–(D); BOE Regs. § 4(b).

Pursuant to the regulations, employees must maintain time records reflecting their hours worked. City Regs. § 11.1; HHC Regs. § 1.0(A); BOE Regs. § 5; *see* Defs.' Resp. to Pltfs.' First Req. for Admis. of Facts ("Defs.' Admis.") No. 10. The impetus for the institution of this action is plaintiffs' failure to receive any credit for time worked beyond the regular work week. *See* City Regs. § 6.0; BOE Regs. § 10(a).

As will be made clear below, critical to the determination of whether plaintiffs should receive overtime compensation under FLSA is an analysis of the circumstances under which deductions may be made by defendants from plaintiffs' compensation. Leave allowances provided by defendants to plaintiffs are important in this regard.

Plaintiffs accrue between twenty and twenty-seven days of paid annual leave allowance each year which can be used for vacation, personal business, or religious holiday leave. City Regs. § 4; HHC Regs. § 2.1; BOE Regs. § 8. Plaintiffs also accrue twelve days of paid sick leave allowance each year. City

Regs. § 5; HHC Regs. § 2.2; BOE Regs. § 9. Use of annual leave allowance and sick leave allowance requires the approval of a supervisor and is measured by the hour for the City and the BOE and by the half-hour for the HHC. City Regs. §§ 4.4, 5.3; HHC Regs. §§ 1.0(B)(3), 2.1(E), 2.2(C); BOE Regs. §§ 8, 9.[4]

Various scenarios exist under the regulations in which defendants may make deductions from plaintiffs' compensation. Employees are most clearly susceptible to pay deductions in instances where they have been absent from work yet have exhausted their leave allowances or have not received approval for use of leave allowances.[5] Additionally, defendants provide for a lump sum payment of unused accrued leave upon separation from employment. City Regs. § 7; HHC Regs. § 8.0; BOE Regs. § 14. Charges made against a leave allowance during employment may then be construed as deductions in pay to the extent any lump sum payment might be reduced accordingly.[6] Furthermore, a deduction in compensation may occur in connection with the calculation of a lump sum payment if an employee is found to have a negative leave balance upon separation from employment; in such a case, the employee might find her final paycheck reduced accordingly.

A review of defendants' treatment of the following items is particularly useful in evaluating plaintiffs' FLSA claim.

---

erwise governed by the same regulations in all respects material to this action. None of the plaintiffs in uniformed service work in the New York City Police Department or in the New York City Correction Department, and the Court makes no findings in regard to employees of those departments in uniformed service.

4. Additionally, supervisors have discretion to authorize limited use of a leave allowance before it is earned. City Regs. §§ 4.5, 5.4; HHC Regs. §§ 2.1(E), 2.2(C)(3); BOE Regs. §§ 8(f), 9(f). Under certain circumstances, supervisors also have the discretion to grant paid leave to employees who are absent due to personal illness and have exhausted their leave allowances. City Regs. § 5.5; HHC Regs. § 2.2(C)(4); BOE Regs. § 9(g).

5. "[A] managerial employee could incur a deduction from pay for an absence of less than one work day, but only if the managerial employee has exhausted his or her leave balances. In addition, even if the managerial employee's leave

balances are exhausted, the employee could avoid a pay reduction because the employing agency may advance the employee leave time to be earned in the future or may offset longer hours worked on other days during the same pay period." Defs.' Admis. No. 2; *see id.* No. 7 (similar); *see also id.* No. 3 (similar for deductions from leave allowance).

6. While this argument equating charges against a leave allowance with deductions in pay is informative, the Court does not rely upon it to decide the instant motions. *Cf. Abshire v. County of Kern,* 908 F.2d 483, 487 n. 3 (9th Cir.1990) (declining to address whether employees subject to deductions would be salaried if the deductions were only from leave time and not base pay), *cert. denied,* 498 U.S. 1068, 111 S.Ct. 785, 112 L.Ed.2d 848 (1991). *But see Service Employees Int'l Union, Local 102 v. County of San Diego,* 784 F.Supp. 1503, 1510 (S.D.Cal.1992).

## A. Part–Day Docking

As evident from the time and leave regulations, plaintiffs must account for each hour (for employees of the City and the BOE) or half-hour (for employees of the HHC) of their workweek. Plaintiffs basically must allot any such unit of time away from work to their annual leave allowance or sick leave allowance, offset it against unusually long hours worked at another time, or take leave without pay. Plaintiffs cannot, for instance, simply slip away from work for an hour in order to take care of personal business. In fact, the City and the HHC regulations expressly provide for charging unexcused tardiness against an employee's annual leave allowance or treating it as leave without pay. City Regs. § 4.6; HHC Regs. § 1.0(E).[7]

## B. Disciplinary Penalties

Plaintiffs are subject to disciplinary penalties, including suspensions without pay of one to four days or deductions from leave balances, for infractions other than those of safety rules of major significance. Defs.' Admis. No. 8. Plaintiffs are subject to penalties for a variety of infractions including, for example, insubordination, abuse of sick leave, refusal to report for drug testing, conduct unbecoming, theft of agency property, and misuse of an agency car.

## C. Court Attendance

Plaintiffs are authorized to attend court with pay and without using their accrued annual leave allowance if neither they nor anyone related to them has a personal interest in the case; the regulations specifically allow for paid leave in order for employees to attend court pursuant to a subpoena or court order. City Regs. § 8.0(c); HHC Regs. § 2.4(C). Thus, if one of the plaintiffs was absent from work in order to testify at a court proceeding in which she or someone related to her had a personal interest, the plaintiff would have to attempt to use her annual leave allowance, attempt to offset the time against unusually long hours worked at another time, or take leave without pay.

## D. Military Leave

Plaintiffs may take military leave with pay for twenty-two work days or thirty calendar days each year. N.Y. Mil. Law § 242(5) (McKinney 1990) (incorporated into City Regs. § 8.1, HHC Regs. § 2.4(G), and BOE Regs. § 11). Beyond those periods, however, plaintiffs must seek to use their annual leave allowance, seek to offset the time against unusually long hours worked at another time, or take leave without pay.

## II. Actual Deductions

Despite plaintiffs' vulnerability under the time and leave regulations to deductions from pay, actual deductions have rarely been made by defendants. In other words, plaintiffs appear for the most part to use their leave allowances or to account otherwise for absences rather than take leave without pay.

The parties dispute the extent to which deductions from pay have been made by defendants. Defendants contend that only two of the plaintiffs in this action have received such a deduction. The City did not pay John D. Brady for the last eight days of an approximately three-month period in 1991 while he was on active military duty; Brady had exhausted his annual leave allowance. In addition, the HHC penalized Vito LaBella for misconduct concerning the use of a computer system by, *inter alia*, deducting $258.00 from his pay.

In contrast, plaintiffs contend that approximately ten of them have received deductions in pay. Given the procedural posture of this matter, I will proceed to review plaintiffs' claims acknowledging only the two deductions in pay identified by defendants. As will be shown, the Court's holding does not depend upon the occurrence of any actual deductions in compensation.

## III. The FLSA Claim

### A. Overview

Initially, the Court notes that the Supreme Court has found the application of FLSA's overtime requirements to state and local gov-

---

7. Deductions for tardiness may also be viewed as disciplinary penalties, which are discussed immediately below. *See Klein v. Rush–Presbyteri-an–St. Luke's Medical Center*, 990 F.2d 279, 286 (7th Cir.1993); *Lacey v. Indiana State Police Dep't*, 810 F.Supp. 244, 247 (S.D.Ind.1992).

ernments to be constitutional. *Garcia v. San Antonio Metro. Transit Auth.,* 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985). Accordingly, plaintiffs appear at first glance to be entitled to overtime compensation under FLSA at one and one-half their regular rate for hours worked in excess of forty hours each week. 29 U.S.C. § 207(a). Plaintiffs' claim fails, however, if the statutory exemption to FLSA's overtime requirements applies to plaintiffs. 29 U.S.C. § 213(a)(1).

This exemption relieves employers from FLSA's overtime compensation provisions in the case of "any employee employed in a bona fide executive, administrative, or professional capacity ... as such terms are defined and delimited from time to time by regulations of the Secretary [of Labor]." 29 U.S.C. § 213(a)(1). Accordingly, the merits of plaintiffs' FLSA claim turn upon whether plaintiffs are "employed in a bona fide executive, administrative, or professional capacity."

■ Looking to the Department of Labor ("DOL") regulations, "executive," "administrative," and "professional" are defined in a manner such that plaintiffs fall within the exemption if they meet a duties test and are compensated for their services on a salary basis. *See Martin,* 949 F.2d at 613; *Abshire,* 908 F.2d at 484; 29 C.F.R. §§ 541.1–.3. The parties have stipulated that the job duties of plaintiffs satisfy the requirements for exemption under § 213(a)(1). Accordingly, the FLSA claim may be reduced to the issue of whether plaintiffs are compensated for their services on a salary basis. If so, then plaintiffs come within the exemption of § 213(a)(1) and their claim under FLSA fails.

■ Before embarking upon an analysis of whether plaintiffs are paid on a salary basis, the Court notes that the exemption of § 213(a)(1) is to be narrowly construed and that defendants bear the burden of demonstrating that plaintiffs fall within the exemption. *See Arnold v. Ben Kanowsky, Inc.,* 361 U.S. 388, 392, 80 S.Ct. 453, 456, 4 L.Ed.2d 393 (1960); *Martin,* 949 F.2d at 614.

**B.** *Discussion*

According to the DOL regulations,

(a) An employee will be considered to be paid "on a salary basis" within the mean-

ing of the regulations if under his employment agreement he regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of his compensation, *which amount is not subject to reduction because of variations in the quality or quantity of the work performed.* Subject to the exceptions provided below, the employee must receive his full salary for any week in which he performs any work without regard to the number of days or hours worked. This policy is also subject to the general rule that an employee need not be paid for any workweek in which he performs no work.

. . . .

(2) Deductions may be made, however, when the employee absents himself from work for a day or more for personal reasons, other than sickness or accident. Thus, if an employee is absent for a day or longer to handle personal affairs, his salaried status will not be affected if deductions are made from his salary for such absences.

(3) Deductions may also be made for absences of a day or more occasioned by sickness or disability (including industrial accidents) if the deduction is made in accordance with a bona fide plan, policy or practice of providing compensation for loss of salary occasioned by both sickness and disability. . . .

(4) Deductions may not be made for absences of an employee caused by jury duty, attendance as a witness, or temporary military leave. . . . .

(5) Penalties imposed in good faith for infractions of safety rules of major significance will not affect the employee's salaried status. Safety rules of major significance include only those relating to the prevention of serious danger to the plant, or other employees, such as rules prohibiting smoking in explosive plants, oil refineries, and coal mines.

29 C.F.R. § 541.118 (emphasis added).

**1.** *Defendants' Time and Leave Regulations*

Inspection of defendants' time and leave regulations in view of the DOL's definition of

"salary basis" exposes several issues which persuade the Court that plaintiffs are not compensated on a salary basis. The Court specifically finds that plaintiffs' compensation is "subject to reduction because of variations in the quality or quantity of the work performed."

At the outset, the Court notes that plaintiffs must account for absences from work lasting less than a day as a result of defendants' measurement of a workday in hour or half-hour segments. From this manner of accounting, a plain inconsistency surfaces between the defendants' time and leave regulations and the DOL's definition of "salary basis." The DOL regulations allow deductions for absences from work *for a day or more* for personal reasons or occasioned by sickness or disability. § 541.118(a)(2)–(3). A deduction for an hour or half-hour absence obviously is not "for a day or more," and the potential for a deduction from plaintiffs' pay for absences of less than one work day under the defendants' time and leave regulations therefore operates in direct conflict with the DOL regulations.

This variance in defendants' time and leave regulations from the DOL's definition of "salary basis" was recently condoned by new regulations issued by the DOL. These "special provisions applicable to employees of public agencies" allow employees of a public agency, such as plaintiffs, to qualify for the exemption of § 213(a)(1) despite the docking of pay "for absences for personal reasons or because of illness or injury of less than one work-day." 29 C.F.R. § 541.5d. Prior to the promulgation of § 541.5d, the conflict between the defendants' time and leave regulations and the DOL regulations would have signalled that plaintiffs were not compensated on a salary basis. *See Martin,* 949 F.2d at 615 ("[A]n employee who can be docked pay for missing a fraction of a workday must be considered an hourly, rather than a salaried, employee."); *Whitmore v. Port Auth. of New York & New Jersey,* 907 F.2d 20, 21 (2d Cir.1990); *Donovan v. Carls Drug Co., Inc.,* 703 F.2d 650, 652 (2d Cir.1983); U.S. Department of Labor, Wage and Hour Division, Letter Ruling of January 15, 1986 (the "1986 letter ruling"). In view of § 541.5d, however, the Court does not rely upon defendants' part-day docking of pay in order to disqualify plaintiffs from the exemption.[8]

Putting aside the issue of part-day docking, other obstacles prevent defendants from meeting their burden of proving the exemption under § 213(a)(1).[9] First, plaintiffs are subject to penalties for infractions of safety rules not of major significance. A more direct variance by defendants from the DOL regulations defining "salary basis" is difficult to fathom. *See Shockley,* 997 F.2d at 24–25; *Klein,* 990 F.2d at 284–87; *Lacey,* 810 F.Supp. at 247–48; *Service Employees Int'l Union,* 784 F.Supp. at 1511; *Pautlitz v. City of Naperville,* 781 F.Supp. 1368, 1371–72 (N.D.Ill.1992). *Compare* Defs.' Admis. No. 8 (admitting possibility of penalties for infractions other than those of safety rules of major significance) *and* 29 C.F.R. § 541.-118(a)(5) (restricting penalties to infractions of safety rules of major significance).[10]

---

**8.** Notably, if the Court were to rely upon this part-day docking and not proceed to find other support for its finding that plaintiffs are not paid on a salary basis, § 541.5d would not shield defendants from all liability in this action. The part-day docking would be a sufficient basis to disqualify plaintiffs from the exemption under § 213(a)(1) for the relevant period preceding the promulgation of § 541.5d. *See Shockley v. City of Newport News,* 997 F.2d 18, 22–23 (1993); *Michigan Ass'n of Governmental Employees v. Michigan Dep't of Corrections,* 992 F.2d 82, 84 (6th Cir.1993). As the Court finds plaintiffs not to be paid on a salary basis regardless of the part-day docking, dissection of plaintiffs' claims over time in relation to the promulgation of § 541.5d is unnecessary.

**9.** Section 541.5d only affected reductions for absences of less than one day for personal reasons or due to illness or injury and left "[a]ll other aspects of the salary test ... unchanged." 57 Fed.Reg. 37671; 57 Fed.Reg. 37673.

**10.** When the DOL issued § 541.5d, it explicitly declined to distinguish public employers from private employers in regard to the ability to make pay deductions as penalties under § 541.-118(a)(5). 57 Fed.Reg. 37674. The Corporation Counsel for the City of New York, O. Peter Sherwood, acknowledged this distinction in his September 16, 1992 statement before the House of Representatives Committee on Education and Labor Subcommittee on Labor Standards ("Statement"). Statement at 11 ("[Section 541.5d] failed, however, to address the effect of

In addition, plaintiffs who are absent from work in order to testify at a court proceeding in which they or someone related to them has a personal interest may have to take leave without pay under the defendants' time and leave regulations. This directly conflicts with the DOL's regulations disallowing deductions from compensation for absences caused by attendance as a witness. 29 C.F.R. § 541.118(a)(4). Similarly, defendants' limitation on paid military leave presents the potential for employees on temporary military leave to take leave without pay; under the DOL regulations, deductions may not be made for absences caused by temporary military leave. *Id.*[11]

The manifest discrepancies between the defendants' time and leave regulations and the DOL's definition of "salary basis" in regard to penalties and absences for attendance at court proceedings or due to military leave prevent defendants from meeting their burden regarding the exemption under § 213(a)(1).

### 2. "Subject to Reduction"

Defendants' primary response contends that something more than the theoretical imposition of pay deductions is required in order to disqualify plaintiffs from the exemption under § 213(a)(1), and actual deductions have only been made twice by defendants, in the cases of plaintiffs Brady and LaBella. Defendants would therefore have the Court fashion a standard by which plaintiffs and other public employees would only be prevented from meeting the exemption where

there have been actual "regular and recurring" deductions in compensation.

Defendants recognize the existence of two schools of thought regarding whether actual deductions from compensation are necessary prior to finding that employees fall without the § 213(a)(1) exemption. In support of the course exhorted by defendants—that deductions in compensation must be actual and regular and recurring in order to remove employees from the exemption—defendants rely upon a line of decisions originating outside the Second Circuit and upon an ambiguous paragraph found toward the end of the 1986 letter ruling.

As represented by defendants, courts outside the Second Circuit have held that something more than the possibility of a deduction in compensation is necessary in order to disqualify an employee from the exemption. *See Atlanta Professional Firefighters Union, Local 134 v. City of Atlanta,* 920 F.2d 800, 805 (11th Cir.1991) (pay not subject to reduction where no evidence of employees ever suffering reduction in pay); *Harris v. District of Columbia,* 709 F.Supp. 238, 241 (D.D.C.1989) (refusing to rely upon "impermissible deductions [which are] less frequent than occasional"); *District of Columbia Nurses' Ass'n v. District of Columbia,* C.A. 87–1675, 1988 WL 156191, at *2 (D.D.C. January 28, 1988) (employees paid on salary basis where deduction "only in the occasional situation"); *see also York v. City of Wichita Falls, Tex.,* 944 F.2d 236, 242 (5th Cir.1991) (lack of evidence of docking of pay).[12] *Con-*

---

other deductions from pay under the salary basis test, such as a deduction for a disciplinary violation."); *cf. Shockley,* 997 F.2d at 25 ("The power to reduce an employee's pay [as a disciplinary sanction] for failure to report an absence is inherent in the power to reduce an employee's pay for part-day and full-day absences for personal reasons, both of which were permissible following promulgation of § 541.5d").

**11.** Notably, plaintiffs are subject to deductions when they are absent for more or less than a day because of court attendance or military leave. As discussed above, docking of pay for absences of less than a day has been found inconsistent with compensation on a salary basis. *See Martin,* 949 F.2d at 615; *Abshire,* 908 F.2d at 486. The caselaw stating this principle appears specifically to concern absences for personal reasons

or illness or injury under § 541.118(a)(2)–(3) (expressly allowing absences for "a day or more") and, as already related, has been nullified by § 541.5d as to public employees. As § 541.-118(a)(4) addresses absences caused by attendance as a witness and temporary military leave and does not contain any language regarding the duration of the absence, the Court finds the deductions for absences as a witness or due to military leave at issue in this case to conflict with § 541.118(a)(4) regardless of the length of the absence.

**12.** Although defendants have cited *York,* the decision is not inconsistent with the cases reviewed below which favor plaintiffs' position that the existence of a policy of impermissible deductions meets the "subject to reduction" language of § 541.118(a). The *York* court recognized that it

*tra Kinney v. District of Columbia,* 994 F.2d 6 (D.C.Cir.1993) (rejecting *Harris* and *District of Columbia Nurses' Ass'n* ). Furthermore, the argument requiring "more than occasional" deductions appears to spring in part out of language contained in the 1986 letter ruling:

> Where an occasional deduction that is not permitted by section 541.118 is made from the salary of an otherwise exempt employee, the exemption would be lost in that workweek when the deduction is made. However, if such deductions are regular and recurring, we would question whether the employee is actually paid "on a salary basis" and the exemption may be denied in all workweeks in which it is claimed, including those weeks when no deductions are made.

In contrast to these authorities, numerous courts have held that employee compensation is "subject to reduction" under § 541.118(a) if a policy of the employer provides for deductions disallowed by the DOL regulations for salaried employees regardless of whether such deductions have been made. *See Kinney,* 994 F.2d at 11; *Abshire,* 908 F.2d at 487; *Banks v. City of North Little Rock,* 708 F.Supp. 1023, 1025 (E.D.Ark.1988) (no showing of actual deduction needed); *Hawks v. City of Newport News, Va.,* 707 F.Supp. 212, 215 (E.D.Va.1988) (employer's policy under attack under FLSA and whether policy has been applied does not alter policy itself); *Persons v. City of Gresham, Or.,* 704 F.Supp. 191, 194 (D.Or.1988) (immaterial that an instance of actual deduction not alleged); *Knecht v. City of Redwood City,* 683 F.Supp. 1307, 1311 (N.D.Cal.1987) (lack of actual pay reduction does not alter analysis); *see also Shockley,* 997 F.2d at 21–25 (focusing upon defendant's policy); *Michigan Ass'n of Governmental Employees,* 992 F.2d at 85–86 (focusing upon policy but, finding policy ambiguous, looking to application of policy). Moreover, courts have explicitly considered the impact of the enigmatic paragraph in the 1986 letter ruling upon their analysis and, in the opinion of the undersigned, correctly interpreted the 1986 letter ruling so that, al-

though an occasional unpermitted deduction which is inadvertent or unintentional would not change an employee's salary status, the frequency of actual deductions is immaterial to finding employees' compensation "subject to reduction" where the employer has a policy allowing deductions for unpermitted reasons. *Abshire,* 908 F.2d at 488; *Harrison v. District of Columbia,* Nos. 87–0809, 87–2275, 88–1028 and 88–3223, 1991 WL 104260 (D.D.C. April 16, 1991); *Knecht,* 683 F.Supp. at 1311; *cf. Banks,* 708 F.Supp. at 1024–25 (letter ruling relied upon by defendant but not provided to court). *But see Harris,* 709 F.Supp. at 241; *District of Columbia Nurses' Ass'n,* 1988 WL 156191, at *2 n. 1. Even if the cited paragraph from the 1986 letter ruling had the significance urged upon the Court by defendants, the "letter ruling cannot override the express provisions of a Department of Labor regulation" in any event. *Abshire,* 908 F.2d at 488. In my opinion, "subject to reduction" when plainly read does not require actuality but intimates possibility and susceptibility and begs only the question of whether a policy exists under which a deduction may occur.

Furthermore, unambiguous material generated by the DOL seems to recognize that actual deductions are unnecessary before the exemption is lost. In its promulgation of § 541.5d, the DOL declined the suggestion of one commentator to "alter[ ] the regulations to require that an actual deduction of pay occur before the exemption is lost." 57 Fed. Reg. 37672. The DOL expressly found that requiring an actual deduction was inconsistent with the appropriate focus upon the pay system at issue. 57 Fed.Reg. 37673.

Despite defendants' presentation to the Court of these two lines of cases in a form suggesting that the issue of how to interpret "subject to reduction" is one of first impression in the Second Circuit, the Court of Appeals for the Second Circuit has unmistakably embraced the reasoning contained in *Abshire* that employee compensation is "subject to reduction" where a policy exists under

---

had no evidence before it of either actual deductions *or* a policy of docking pay. 944 F.2d at

242.

which employees may be docked pay even though deductions have not actually been made. *Martin,* 949 F.2d at 615–17. Given the reliance in *Martin* upon cases concerning public employees, including *Abshire,* and the absence of language in *Martin* distinguishing the treatment under FLSA of private and public employees, I do not view the fact that *Martin* concerned private employees to. make its holding inapplicable here.

Furthermore, I see no basis for distinguishing the proper interpretation of "subject to reduction" under § 541.118(a) depending upon whether a case concerns § 541.-118(a)(2)–(3) as in *Martin* or § 541.118(a)(4)–(5) as in the instant case. Defendants concur on this point. Defs.' Mem. at 21. Notably, precedent exists under § 541.118(a)(5)—separate from the cases already cited for the *Abshire–Martin* interpretation of "subject to reduction"—that· whether or not penalties have actually been imposed is immaterial to finding that compensation is "subject to reduction." *See Klein,* 990 F.2d at 286; *Lacey,* 810 F.Supp. at 248 n. 1; *see also Service Employees Int'l Union,* 784 F.Supp. at 1511. *But see Atlanta Professional Firefighters Union,* 920 F.2d at 805 (where no evidence of actual deduction, employee exempt despite ordinance requiring decrease in compensation for arriving late or violating other regulations).

█ Finally, it should be noted that § 541.5d does not alter the Court's interpretation of "subject to reduction" under § 541.-118(a). Although § 541.5d varies the analysis under § 541.118(a) in regard to when public employees' pay may be reduced "for absences for personal reasons or because of illness or injury of less than one work-day" and consequently overrules the holding of *Abshire,*[13] § 541.5d is silent as to the issue of whether "subject to reduction" requires an actual deduction to occur before an employee

is no longer considered salaried under § 541.118(a). Accordingly, the Court disagrees with defendants' contention that § 541.5d overrules the interpretation of "subject to reduction" contained in *Abshire* and *Martin.*[14]

In view of the mandate to construe the exemption of § 213(a)(1) strictly, the Court finds that defendants have failed to meet their burden to demonstrate that plaintiffs fall within the exemption. Although § 541.5d prevents plaintiffs from being disqualified from the exemption based upon deductions for absences of less than one day of work, plaintiffs' compensation is "subject to reduction" for penalties not for infractions of safety rules of major significance and for absences caused by attendance as a witness or temporary military leave. Pursuant to § 541.118(a)(4)–(5), these deductions establish that plaintiffs are not paid on a salary basis and therefore are ineligible for the exemption from the overtime compensation provisions of FLSA.

## C. Defenses

Lastly, defendants assert three additional arguments in defense of plaintiffs' claim un-. der FLSA which I shall briefly review.

### 1. Constitutionality

Defendants posit that *Garcia* establishes an "undue burden" test. Pursuant to the test put forth by defendants, lower courts are to issue relief where an undue burden exists as a result of failures by the political process to temper the effect of federal statutes upon state and local governments. Defendants' reading of *Garcia* is somewhat backward. Although the Court explores defendants' argument, the Court recognizes at the outset that its decision merely follows *Garcia's* holding that the application of FLSA to state and local governments is constitutional.

---

**13.** If *Martin* had concerned public employees, its holding would also have been overruled by § 541.5d. As to the Second Circuit's decisions in this area, § 541.5d appears to be at variance only with *Whitmore.*

**14.** The DOL is fully cognizant of the division of authority concerning whether "subject to reduction" under § 541.118(a) requires the existence

of actual deductions in order to place an employee outside the exemption of § 213(a)(1). *See* 57 Fed.Reg. 37669. In asking this Court to require actual deductions, defendants in effect encourage the Court to embark upon a course which the DOL has, at least thus far, declined to follow. In view of *Martin,* the path on which this Court must travel is well-marked.

In *Garcia*, the Supreme Court found unworkable and inconsistent with established principles of federalism the traditional/non-traditional test which it had previously established in *National League of Cities v. Usery*, 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976), for determining state immunity under the Commerce Clause. Although the Supreme Court did discuss in *Garcia* "the built-in restraints that our system provides through state participation in federal governmental action," 469 U.S. at 556, 105 S.Ct. at 1020, it did not fashion an "undue burden" test or any other test. "Although *Garcia* left open the possibility that some extraordinary defects in the national political process might render congressional regulation of state activities invalid under the Tenth Amendment, the Court in *Garcia* had no occasion to identify or define the defects that might lead to such invalidation." *South Carolina v. Baker*, 485 U.S. 505, 512, 108 S.Ct. 1355, 1361, 99 L.Ed.2d 592 (1988).

I perceive absolutely no basis in this matter for finding "extraordinary defects in the national political process" under *Garcia–Baker* despite defendants' assertion that "the political process has broken down." Defs.' Mem. at 25; *see State of New York v. United States*, 942 F.2d 114, 119–21 (2d Cir.1991), *aff'd in part, rev'd in part*, —— U.S. ——, 112 S.Ct. 2408, 120 L.Ed.2d 120 (1992); *EEOC v. State of Vermont*, 904 F.2d 794, 802 (1990). To the extent that defendants complain about the political process, they focus upon the damages they face in this action—which they view as an undue burden and a result of failures in the political system—without pointing to any substantive defect in the political process itself. In other words, defendants emphasize effect and undue burden while turning a blind eye to cause and defects in the political process.

Having reviewed profuse submissions relating to revisions of the current law regarding the salary basis test, which involve, *inter alia*, the DOL, Congress, and state and local governments including defendants, it appears to me that the political process has operated proficiently despite the enduring existence of defendants' exposure to liability under FLSA. Indeed, the existence of § 541.5d and the redemption it affords in this very action to defendants' part-day docking policies provides concrete proof of the vitality of the political process. It remains to be seen whether the efforts of defendants and others in the political system can achieve what cannot be attained in this action—the erasure of defendants' exposure to overtime compensation liability under FLSA *in toto*.

### 2. Administrative Procedure Act

Defendants' argument concerning the Administrative Procedure Act (the "APA"), 5 U.S.C. §§ 551 *et seq.* (1988), is greatly confused. In short, defendants appear to contend that failure to find plaintiffs to be compensated on a salary basis pursuant to § 541.118(a) violates the APA because of congressional intent that public employees qualify for the exemption under § 213(a)(1). Defendants provide no evidence of congressional intent.[15] Defendants also contend that the DOL regulations are arbitrary and capricious in violation of the APA. In sum, defendants' arguments under the APA boil down to a restatement of their contention reviewed above that "subject to reduction" under § 541.118(a) should be interpreted to require actual deductions from employee compensation. Dressed under the APA, defendants' argument still fails.

### 3. Defendants' Good Faith

■ Defendants' last defense asserts that they are entitled to a good faith defense under § 10 of the Portal-to-Portal Act (the "Portal Act"), 29 U.S.C. § 259 (1988), which provides that "no employer shall be subject to any liability [under FLSA] if he pleads

---

**15.** Defendants seek to infer congressional intent from statements made by the DOL. Rather than delineate congressional intent, these citations illustrate the potential for revision of the DOL regulations as a result of the political process

and the fact that grey areas exist as to what categories of employees should be exempt from FLSA's overtime compensation provisions. *Cf. Kinney*, 994 F.2d at 9 (noting interaction be-

and proves [16] that the act or omission complained of was in good faith and in conformity with and in reliance on any written administrative regulation, order, ruling, approval, or interpretation [of the DOL] or any administrative practice or enforcement policy of such agency with respect to the class of employers to which he belonged." [17]

Initially, I note that defendants elaborate upon evaluations of FLSA's overtime compensation provisions made by them in the "Citywide Fair Labor Standards Act Committee" and in consultation with internal and outside counsel. Unless connected to a "written administrative regulation, order, ruling, approval, or interpretation" of the DOL, however, these evaluations are irrelevant under the Portal Act. See 29 C.F.R. § 790.13. Similarly, meetings with the DOL have no bearing upon the defense in the absence of a writing by the DOL. Although I have taken these consultations into account in my examination of the written materials upon which defendants claim reliance, I nevertheless find defendants' assertion of a Portal Act defense to fail.

The 1986 letter ruling is the first written material claimed by defendants to support a Portal Act defense in this action. As already discussed, however, this letter ruling does not sustain defendants' time and leave regulations (1) because it does not disqualify public employees from exemption under § 213(a)(1) where the employer has a policy allowing deductions for unpermitted reasons and (2) because the letter ruling in no manner overrides the plain "subject to reduction" language of § 541.118(a). See Abshire, 908 F.2d at 488; see also Harrison, 1991 WL 104260; Knecht, 683 F.Supp. at 1311. Furthermore, even if the 1986 letter ruling is viewed as requiring actual deductions to occur before exemption is lost, the letter ruling concerns deductions made for absences of less than one day and not deductions for court attendance as a witness, temporary military leave, and penalties not for infractions of safety rules of major significance— the deductions which create the basis for liability in this case.[18]

Defendants also refer to a 1987 DOL letter ruling which stated a DOL nonenforcement policy in regard to deductions from public employees' compensation made for absences of less than a day for personal reasons or because of illness or accident; this letter ruling reflects part of the genesis of § 541.-5d. U.S. Department of Labor, Wage and Hour Division, Letter Ruling of January 9, 1987 (the "1987 letter ruling"). As with the 1986 letter ruling, the 1987 letter ruling does not support a Portal Act defense because it does not speak to the types of deductions at issue in this action.[19] In his statement be-

tween the DOL regulations and congressional intent).

16. Defendants did assert a Portal Act defense in their answer as an affirmative defense. However, I discern no disputed material fact and find the defense deficient as a matter of law drawing all reasonable inferences against plaintiffs. See Quinn v. New York State Elec. & Gas Corp., 621 F.Supp. 1086, 1089 (N.D.N.Y.1985) ("summary judgment has been found to be an appropriate tool to dispose of cases involving a Portal-to-Portal Act defense"); see also EEOC v. Home Ins. Co., 672 F.2d 252, 257 (2d Cir.1982) (summary judgment rarely appropriate where state of mind is material issue); Clifton D. Mayhew, Inc. v. Wirtz, 413 F.2d 658 (4th Cir.1969) (affirming grant of summary judgment for plaintiff where defendant asserted a Portal Act defense).

17. [T]he Portal Act defense requires the employer to establish three interrelated elements: (1) that its action was taken in reliance on a ruling of the [DOL], (2) that it was in conformity with that ruling, and (3) that it was in good faith.

Home Ins., 672 F.2d at 263; see also 29 C.F.R. §§ 790.1–.22 (DOL interpretation of the Portal Act).

18. Decisions which find that actual deductions are not required in order to disqualify employees from the exemption under § 213(a) have in fact cited the 1986 DOL letter ruling for its holding that deductions for absences of less than a day are disallowed under § 541.118(a)(2)–(3) for salaried employees. Hawks, 707 F.Supp. at 214; Knecht, 683 F.Supp. at 1311.

19. Even as to the part-day docking addressed in the 1987 letter ruling, applicability to defendants is doubtful. The 1987 letter ruling, by its terms, applies "only where the public employer can show that a provision contained in applicable State or local law in effect prior to April 15, 1986, prohibits payments [for absences of less than a day]." In their support, defendants cite the New York constitutional prohibition against municipal gifts of money or property to individuals. N.Y. Const. art. VIII, § 1. This constitutional provision does not, however, require de-

fore Congress, the Corporation Counsel of the City of New York explicitly recognized that the 1987 letter ruling does not deal with penalties, attendance as a witness, and temporary military leave. Statement at 9. In addition, the 1987 letter ruling expressly states that it does not shield defendants from suits by employees, such as the instant action. *See Kinney,* 994 F.2d at 8, 13; *see also* 57 Fed.Reg. 37668 (noting nonenforcement policy's inapplicability to employees in connection with the Portal Act).

Furthermore, "the Portal Act language, 'in good faith in conformity with,' precisely links the question of good faith to an act in conformity, and if there is no conformity, general good faith in other respects cannot save the day." *Home Ins.,* 672 F.2d at 265. The material parts of defendants' time and leave regulations were in existence prior to the 1986 letter ruling. Defendants took no action "in conformity with" the 1986 letter ruling or the 1987 letter ruling, except for attempts to determine whether actual deductions had been made under their regulations. If defendants viewed the 1986 letter ruling and the 1987 letter ruling to require actual regular and recurring deductions in compensation before exemption would be lost, affirmative conforming action would be expected from defendants, such as the issuance of regulations to restrict actual deductions.[20] Especially in view of the fact that neither letter ruling speaks to pay deductions for penalties, court attendance, or military leave, it is clear that defendants could not have relied upon the letter rulings for the maintenance of the time and leave regulations. *See* 29 C.F.R. § 790.14(b) (lack of conformity where employer assumes irrelevancy of varied circumstances).

■ Defendants essentially contend that they should not be found liable because of the flux surrounding FLSA's overtime compensation provisions for public employees after *Garcia.* The fundamental problem with this argument is that it effectively blocks public employees such as plaintiffs from receiving relief under FLSA until the political process irons out all of the wrinkles caused by the application of FLSA to public employees. Any uncertainty resulting from these political travails cannot form the basis for a Portal Act defense.

> The defense of good faith is intended to apply only where an employer innocently and to his detriment, followed the law as it was laid down to him by government agencies, without notice that such interpretations were claimed to be erroneous or invalid. It is not intended that this defense shall apply where an employer had knowledge of conflicting rules and chose to act in accordance with the one most favorable to him. Vol. 93, Part 4, Cong.Rec. 4390.

*Quinn,* 621 F.Supp. at 1091 (citing legislative history in connection with 29 C.F.R. § 790.15(a)).

Moreover, the shifting waters regarding FLSA's applicability to public employees post-*Garcia* have not been unnavigable. The first decision to require actual deductions in compensation for liability under FLSA, of which the Court is aware, was the 1988 decision *District of Columbia Nurses' Ass'n; Knecht,* issued in 1987, was the first decision, of which the Court is aware, to find that the absence of an actual deduction did not preclude FLSA liability. In view of the fact that defendants' time and leave regulations provided for the imposition of deductions in compensation prior to these decisions, defendants should not have merely stayed their course but should have shifted direction so that

---

fendants to deduct pay from plaintiffs for absences of less than a day. *See Abshire,* 908 F.2d at 489–90; *see also City of Amsterdam v. Local 2825, Amsterdam Professional Firefighters,* 114 A.D.2d 565, 494 N.Y.S.2d 180; *Taylor v. McGuire,* 100 Misc.2d 834, 420 N.Y.S.2d 248.

**20.** In *Service Employees Int'l Union,* defendant amended its ordinance so that "salaried" employees would not be subject to docking for periods of absence of less than one day. 784 F.Supp. at 1510. Plaintiffs have submitted evidence dem-

onstrating a similar measure by the New York City Transit Authority. Kiok Decl. Ex. D. Obviously, this precise concern has been ameliorated by § 541.5d, but similar amendments could cure the other impermissible deductions in defendants' regulations. For instance, in *Klein,* defendant amended its disciplinary procedures so that no pay deductions would occur other than for infractions of safety rules of major significance. 990 F.2d at 282.

actual deductions would not be made until the debate was settled. *See Kinney,* 994 F.2d at 13 ("split in judicial decisions" not reasonable basis for defendant's policy); 29 C.F.R. 790.17(h) (regulation, order, ruling, approval, or interpretation relied upon by employee must be valid at time of reliance).

In sum, plaintiffs should not be subject to a cut in pay because of defendants' misgivings about the political process. The Portal Act was not designed to protect defendants under the circumstances before the Court.

> Congress did not intend by the Portal Act to change the general rule that the remedial provisions of the Fair Labor Standards Act are to be given a liberal interpretation and exemptions therefrom are to be narrowly construed and limited to those who can meet the burden of showing that they come "plainly and unmistakably within (the) terms and spirit" of such an exemption.

29 C.F.R. § 790.2(a). Defendants' course of relief lies with the political process and/or modification of their time and leave regulations; plaintiffs' course of relief lies with this action against defendants.[21]

## IV. *State Claim*

■ As previously stated, plaintiffs' state claim asserts that plaintiffs whose regular work week is thirty-five hours should receive overtime compensation at their regular rate of pay for all hours worked between thirty-five and forty hours each week pursuant to Administrative Code § 12–108.[22] Plaintiffs, however, point to no "statute, general, special or local" establishing thirty-five hours each week as "the maximum number of hours of employment;" accordingly, plaintiffs' state

claim fails. I find plaintiffs' contention that § 12–108 can only reasonably be construed to provide overtime compensation for hours worked beyond an employee's regular workweek to be disingenuous in view of the unambiguous language of the statute. *Cf. Corp v. Alexander,* 92 A.D.2d 430, 460 N.Y.S.2d 674 (plaintiff not fireman with statutory maximum of hours per year that may be worked).

## V. *Conclusion*

The Court finds that plaintiffs are entitled to unpaid overtime compensation for all hours worked in excess of forty hours each week under FLSA. The exemption under § 213(a)(1) does not apply to plaintiffs because they are not compensated on a salary basis according to the DOL regulations and controlling caselaw. This finding emanates from the defendants' time and leave regulations which subject plaintiffs' compensation to reduction for absences caused by attendance as a witness and by temporary military leave and for penalties not for infractions of safety rules of major significance. Plaintiffs' state claim fails because plaintiffs have failed to identify any statute which sets thirty-five hours each week as the maximum number of hours of employment.

Counsel for the parties shall appear at a conference before the Court on August 5, 1993 at 4:30 p.m. in order to address how to proceed in regard to the damage phase of this action.

SO ORDERED.

---

**21.** Another district court recently summarized the situation quite succinctly:

> This area of the law is currently churning, and federal courts issue often contradictory opinions on a daily basis. [Section 541.5d] only begins to address the types of problems faced by local governments because of their negligence (or unwillingness) to bring their policies into line with the FLSA, but we decline to extend the reach of [§ 541.5d's] forgiveness too far beyond its language. At some point public sector employers must be held to answer for their conduct.

*Pautlitz,* 781 F.Supp. at 1374.

**22.** Notwithstanding the provisions of any other statute, general, special or local, the mayor may authorize the head of any agency to require any officer or employee in such agency or any class or group of officers or employees in such agency to work in excess of the maximum number of hours of employment prescribed for such officer or employee or class or group of officers or employees by any statute, general, special or local, provided that each such officer or employee shall be paid overtime compensation for such work at not less than his or her regular basic pay rate.