OPINION OF THE COURT
Bentley Kassal, J.
This is an article 78 proceeding to direct payment to petitioner of a lump sum of $22,057.92 for accumulated overtime and sick leave that he claims was due him upon his resignation from the New York City Police Department.
ISSUE
The threshold issue is whether a mayoral personnel order, authorizing lump-sum payments for accumulated overtime and sick leave benefits issued during the period of a city *835 employee’s service, grants a right that cannot be impaired by subsequent official pronouncements.
FACTS
The facts in this case appear to be undisputed.* Petitioner served as a uniformed member of the New York City Police Department from June 5, 1940 until January 14, 1974, when he was appointed First Deputy Commissioner of the department, a position covered by the executive pay plan. On August 20, 1975 he applied for retirement from the uniformed force waiving lost time and terminal leave, and thereafter continued in the same position, although in a civilian status, until December 31, 1977, when he resigned from the department.
After his resignation on December 31, 1977, petitioner received a report, dated April 11, 1978, prepared by the Fiscal Affairs Division of the New York Police Department and approved by the Police Commissioner, detailing his earned, accumulated overtime, annual leave and sick leave credits totaling the equivalent of 128 Va workdays, as of December 31, 1977, amounting to $22,057.92. Petitioner thereafter requested payment of this sum, but was informed in a June 2, 1978 letter that the Comptroller had since recomputed his lump-sum payment to the maximum amount, 54 workdays, totaling $9,472, eliminating additional accumulated overtime and 23 days of sick leave. The letter stated, "These computations are based on the Comptroller’s announced policy of paying a maximum of 54 days of annual leave and overtime.”
The substantial discrepancy between the two calculations resulted from different applications of a number of personnel orders, issued, during and after petitioner’s period of employment. At the time of his appointment, employees at petitioner’s level were entitled to payment for only a portion of their earned or accumulated overtime, pursuant to personnel order No. 41/72. Half of any overtime was placed in an employee’s reserve overtime bank to be used as extended sick leave in case of catastrophic illness or as terminal leave, upon termination of employment, but there was no provision for a lump-sum payment for unused reserve overtime. The other half of the overtime went into the active overtime bank, where an *836 employee with at least 20 years of service (like petitioner) could utilize the credits, up to a maximum of 100 days, towards a lump-sum payment in lieu of terminal leave upon retirement. In addition, on January 1, 1975, personnel order No. 16/74 became effective providing for a lump-sum payment upon final separation to employees with at least 10 years of service (like petitioner) covering accrued sick leave (one workday for every two days of such leave — with a maximum of 120 workdays), accrued annual leave and overtime.
On June 17, 1977, personnel order No. 24/77 superseded No. 41/72. The new order transferred all credits in an employee’s current active overtime bank and/or reserve overtime bank to a single overtime bank. It further authorized a lump-sum payment for unused overtime in. the overtime bank up to a maximum of 100 days upon termination of employment, thereby affording employees in petitioner’s position the opportunity to be paid in a lump sum for time theretofore unavailable for that purpose. Since petitioner had accrued more than 900 hours of reserve overtime prior to that date, in addition to his active overtime, he was thereby eligible for a lump-sum payment for the maximum of 100 days upon retirement plus his accrued sick leave.
Subsequently, on January 13, 1978, personnel order No. 78/ 9 was issued, effective January 1, 1978, one day after petitioner resigned from the department. That order eliminated the right to earn overtime, to accrue annual leave in excess of 54 days or to receive any payment for accrued sick leave upon termination. However, it did contain a section preserving certain vested rights which stated: "All annual leave, sick leave, and compensatory time balances to the credit of an employee covered by the * * * Executive Pay Plan as of * * * [12/31/77] * * * shall remain to the employees credit. Such balances may be used either in accordance with these leave regulations or in accordance with [#24/77].”
Petitioner claims that when he changed to civilian status in 1975 it was in reliance on what was "essentially” a contractual agreement with the city, wherein the latter promised petitioner these retirement benefits. He similarly alleges that a previous personnel order in 1977, signed by the Mayor, during his employment, specifically authorized such lump-sum benefits and that, therefore, the Comptroller’s "announced policy” is, inter alia, arbitrary and capricious and an unconstitutional impairment of a pre-existing contract right. Respon *837 dents claim that the 1977 personnel order, as applied to petitioner, would grant retroactive benefits without consideration therefor and that payment of more than $9,472 for 54 days’ service permitted under prior orders would violate both the New York State Constitution ("Constitution”) and the Administrative Code of the City of New York.
CONTROLLING LEGAL PRINCIPLES
It is clear that none of the mayoral orders or other official pronouncements may operate retroactively so as to impair a vested or contractual right in existence at the time of the petitioner’s employment and it is equally clear that the Mayor is proscribed from retroactively increasing the salary of a city employee. (Administrative Code, § 124-1.0.) Section 1 of article VIII of the Constitution also prohibits the granting of any retroactive benefit which would amount to a "gift” of public funds.
CONCLUSION
Personnel order No. 24/77, while providing increased compensation for prior and current services, did not violate section 124-1.0 of the Administrative Code which prohibits retroactive salary increases.
Since that provision restricts rights which would otherwise be available, the word "salary” must be construed narrowly to mean an employee’s base pay. (See, e.g., Phaneuf v City of Plattsburgh, 84 Misc 2d 70.) This must be contrasted to the interpretation which would follow had a broader term been employed, such as "compensation” — which includes earned sick leave benefits, accrued vacation time and other "fringe benefits”. (See Christian v County of Ontario, 92 Misc 2d 51.) This interpretation is consistent with the use of the term "salary” in the personnel orders and computation sheets, which differentiate between salary and overtime, annual leave, sick leave, etc.
Nor does personnel order No. 24/77 violate the constitutional prohibition against gifts by a municipality. That section was intended to "curb raids on the public purse for the benefit of favored individuals or enterprises furnishing no corresponding benefit.” (Local 456 Int. Brotherhood of Teamsters v Town of Cortland, 68 Misc 2d 645, 649; see, also, Matter of Mahon v Board of Educ., 171 NY 263.) It is inapplicable where "without *838 any previous agreement on the subject of compensation, additional compensation is granted for services previously rendered.” (Timmerman v City of New York, 69 NYS2d 102, 108, affd 272 App Div 758; emphasis in original.) Where an employee continues to work and foregoes the right to retire or otherwise leave his job, ample legal consideration has been held to have been furnished and retroactive pay increases under such circumstance are not "gifts”. (Timmerman v City of New York, supra.)
Thus, personnel order No. 24/77 validly permitted the transfer of accrued time credits and a lump-sum payment therefor upon termination. While subsequent orders could have reduced these rights prospectively, they could not operate retroactively to reduce petitioner’s rights to lump-sum payment for overtime credits which had already accrued.
Finally, I find that petitioner’s prior service in other positions must be considered in determining his right to payment for accrued sick leave and that he, therefore, is entitled to same.
Accordingly, the petition is granted.

 Although the respondents in their answer have denied many of the allegations in the petition, it is clear that such denials are improper since they have annexed to their answer as exhibits, the very documents whose existence they disclaim.