**Harold YOURMAN, et al., Plaintiffs,**

v.

**David N. DINKINS, et al., Defendants.**

**No. 91 Civ. 2197 (LAP).**

United States District Court,
S.D. New York.

Oct. 7, 1994.

Joan Stern Kiok, by Robert N. Felix, New York City, for plaintiffs.

Paul A. Crotty, Corp. Counsel, City of New York, by Marilyn Richter, Patricia B. Miller, New York City, for defendants.

## OPINION & ORDER

PRESKA, District Judge:

Plaintiffs are employees of the City of New York (the "City"), the New York City Health and Hospitals Corporation (the "HHC"), and the Board of Education of the City School District of the City of New York (the "BOE") who have been designated as managerial employees by their respective employers. They bring this action pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–219, seeking unpaid overtime compensation

at time-and-one-half their regular rate of pay for all hours worked in excess of forty hours each week. *See* 29 U.S.C. § 216(b).[1]

In a previous opinion, I granted plaintiffs' motion for summary judgment against defendants holding them liable under FLSA for failing to pay overtime compensation as required by the statute. 826 F.Supp. 736 (1993). In that opinion, I also directed the parties to address issues related to calculating the proper amount of damages, and it is those matters which are discussed herein. Specifically, I now consider the parties' cross-motions for summary judgment on the issues of (a) whether plaintiffs' back overtime claims should be retroactive to a date three years prior to the filing of their individual consents pursuant to the Portal-to-Portal Act, 29 U.S.C. § 255(a); (b) whether plaintiffs are entitled to liquidated damages pursuant to 29 U.S.C. § 216(b); (c) whether plaintiffs are entitled to have their back overtime compensation calculated pursuant to 29 C.F.R. § 778.113 or 29 C.F.R. § 778.114; and (d) whether plaintiffs are entitled to additional straight time pay for non-overtime hours worked in weeks during which they worked in excess of 40 hours.

*Background*

The reader is referred to my previous opinion for a detailed recitation of the facts. *See* 826 F.Supp. at 737–740. For present purposes, it will suffice to recall that defendants' main contention in opposition to liability under FLSA was that plaintiffs are "employed in a bona fide executive, administrative, or professional" capacity and therefore excluded from the statute's overtime requirements. *See* 29 U.S.C. § 213(a)(1). Plaintiffs argued that they did not fall within the exclusion because they were not compensated on a salary basis, as required by the applicable

regulation. *See* 29 C.F.R. §§ 541.1–.3. After reviewing the time and leave policies maintained by defendants' for their employees, 826 F.Supp. at 739, I agreed with plaintiffs that they could not be considered salaried employees and were thus not excluded from FLSA coverage. *Id.* at 744.

As defined by Department of Labor regulations, a salaried employee is one whose compensation is "not subject to reduction because of variations in the quality or quantity of the work performed," except as provided in the regulations. 29 C.F.R. 541.118(a). Several aspects of defendants' time and leave policies led me to conclude that plaintiffs did not work under such conditions:

- plaintiffs were subject to disciplinary penalties, including suspensions without pay of one to four days or deductions from accrued leave time, for infractions of safety rules of less than major significance. *See* 29 C.F.R. 541.118(a)(5);

- plaintiffs were subject to deductions from compensation for absence from work to appear at court proceedings in which they, or one of their relatives, had a personal interest. *See* 29 C.F.R. 541.118(a)(4); and

- plaintiffs were subject to deductions from compensation for absence from work due to military service. *See Id.*

In addition, I noted that the fact that plaintiffs were subject to "part-day docking" for personal absences of less than one day's duration was inconsistent with salaried status under FLSA, although I did not rely on this factor in holding defendants liable.[2]

*Discussion*

*I. The Applicability of a Three–Year Statute of Limitations to Plaintiffs' Claims*

The first damages issue concerns the statute of limitations to be applied to plaintiffs'

---

1. Plaintiffs also seek liquidated damages and reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b) and declaratory relief pursuant to 28 U.S.C. §§ 2201–02.

2. The Department of Labor regulation which denies salaried status to employees who are subject to deductions from pay for personal absences of less than one work-day, 29 U.S.C. § 541.118(a)(2), was rendered inapplicable to public employees by the promulgation of 29

C.F.R. § 541.5d. In view of § 541.5d, and because there were numerous other bases for liability, I stated that my decision to impose liability on defendants did not rest on their policies allowing plaintiffs to be docked pay for missing fractions of work days. *See* 826 F.Supp. at 741. Nevertheless, I noted that defendants could be held liable under FLSA for maintaining those policies prior to the adoption of § 541.5d. *Id.*

claims. The Portal-to-Portal Act, 29 U.S.C. § 255(a), provides a two-tiered statute of limitations for FLSA actions. For ordinary violations, the statute of limitations is two years; for willful violations, a three year limitations period applies. Plaintiffs, not surprisingly, contend that defendants acted willfully, thus triggering the three year statute.

In *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 108 S.Ct. 1677, 100 L.Ed.2d 115 (1988), the Supreme Court considered the meaning of "willful," as that term is used in § 255(a). Justice Stevens, writing for the majority, initially observed that Congress' decision to adopt a two-tiered statute of limitations for FLSA actions signified an intent "to draw a significant distinction between ordinary and willful violations." *Id.* at 132, 108 S.Ct. at 1681. The Court then rejected the petitioner's argument that this congressional mandate could be satisfied by construing "willful" broadly to include violations by those who act knowing only that their conduct is governed generally by FLSA. Noting that the ordinary usage of "willful" excludes merely negligent conduct, the majority instead defined the term to require either knowledge that one's conduct violates FLSA or reckless disregard of the question. *Id.* at 133, 108 S.Ct. at 1681. The majority further refined this standard by observing that, while reasonable conduct could never be deemed willful, unreasonable conduct was not willful *per se*.[3] *Id.* at 135 n. 13, 108 S.Ct. at 1682 n. 13. Finally, the Court made clear that it is the plaintiff's burden in a FLSA action to prove willfulness on the part of the employer.[4] *Id.* at 135, 108 S.Ct. at 1682.

Applying the *McLaughlin* standard to the facts at hand, plaintiffs correctly observe that *Garcia v. San Antonio Metro. Transit Auth.*, 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985), put defendants on notice that FLSA's overtime requirements applied to employees of state and local governments. Defendants have acknowledged their contemporaneous awareness of this decision. Thus, as early as 1985, defendants must be considered to have known that their employees had to be paid overtime wages for hours worked in excess of forty each week, unless the employees fit within FLSA's "executive, administrative, or professional" exemption. The only way this exemption could have applied is if the plaintiffs were salaried employees under 29 C.F.R. § 541.118. Consequently, the crux of the willfulness question in this case is whether defendants knew, or recklessly failed to know, that plaintiffs were not salaried employees. Plaintiffs say "yes" on both counts.

### A. Recklessness

■ With respect to recklessness, plaintiffs are clearly wrong. The Second Circuit has twice applied the knowing-or-reckless standard in deciding whether a defendant had acted willfully in violating FLSA. In *Brock v. Wilamowsky*, 833 F.2d at 18, the Court found a defendant's violations recklessly willful after noting that defendant had acted "without taking any steps whatever to determine the lawfulness of its conduct." The next year, in *Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1062 (1988), the Court again cited a defendant for "reckless disregard" upon finding that it had been notified by a DOL compliance officer that its prac-

---

**3.** In holding that unreasonable conduct is not necessarily willful, the Supreme Court rejected the Second Circuit's position that

> the question of whether or not a defendant had a good-faith or reasonable basis for believing its acts were lawful differs little, if at all, from the question of whether or not its acts were performed with reckless disregard for their legality.

*Brock v. Wilamowsky*, 833 F.2d 11, 18 (2d Cir. 1987).

**4.** The Department of Labor ("DOL"), in regulations effective November 30, 1992, expressly adopted the *McLaughlin* standard for FLSA actions. *See* 29 C.F.R. § 578.3(c)(1). Expanding on the Supreme Court's definition, the regulations provide that

> an employer's conduct shall be deemed knowing, among other situations, if the employer received advice from a responsible official of the Wage and Hour Division to the effect that the conduct in question is not lawful.

29 C.F.R. § 578.3(c)(2). Further,

> an employer's conduct shall be deemed to be in reckless disregard of the requirements of [FLSA], among other situations, if the employer should have inquired further into whether its conduct was in compliance with [FLSA], and failed to make adequate further inquiry.

29 C.F.R. § 578.3(c)(1)(3).

tices could be in violation of FLSA and had failed to heed the officer's advice to seek a formal opinion letter from DOL.

Defendants here by no means acted so egregiously. Very soon after learning of *Garcia*, defendants began efforts to insure that their labor practices complied with FLSA requirements by establishing the City-wide Fair Labor Standards Act Committee. The Committee's purpose was to bring the City into compliance with the newly applicable requirements of FLSA. Its members were representatives of the City's Law Department, Department of Personnel, Office of Labor Relations, and Office of Management and Budget.

During 1985 and 1986, the Committee made substantial efforts to ascertain the implications of FLSA for the City, which are detailed in the uncontested affidavit of Howard Green, dated May 7, 1993. The Law Department was asked to prepare opinions concerning various issues relating to FLSA compliance. Outside counsel was retained to advise on the specific issue of which City employees could be treated as exempt under FLSA. The Committee also made efforts itself to properly determine which employees were exempt. These efforts included reviewing the duties of every job title in the City service, as well as the job description for each title. Additionally, City officials consulted with DOL officials about whether the City's time and leave policies would prevent City employees subject to those policies from being salaried workers under FLSA. The DOL officials indicated that they did not think that was the case, though defendants never endeavored to secure a formal opinion to that effect.

The Supreme Court has found efforts comparable to those exerted by defendants here sufficient to avoid a finding of recklessness. *See Trans World Airlines Inc. v. Thurston*, 469 U.S. 111, 128–130, 105 S.Ct. 613, 625–26, 83 L.Ed.2d 523 (1985) (violation of Age Discrimination in Employment Act not willful

where defendant consulted with counsel, met with employees, and devised a plan for compliance).[5] *See also Aaron v. City of Wichita*, No. 90–1536–PFK, 1993 WL 93337 (D.Kan. Mar. 9, 1993) (violation of FLSA not willful where defendant city had established FLSA compliance review committee, consulted outside counsel, and consulted DOL). As a matter of law, therefore, I find that defendants' FLSA violations cannot be labeled willful on that basis.

### B. Knowledge

Before discussing plaintiffs' claim that defendants' violated FLSA knowingly, it will be helpful to restate briefly the substance of the violations. Recall that the basis of defendants' FLSA liability was their maintenance of certain time and leave policies which prevented plaintiffs from being considered salaried employees, exempt from coverage by the statute. Specifically, those policies related to disciplinary sanctions, military leave, court appearances, and part-day docking.[6]

█ To carry their burden of proof on the issue of knowledge, plaintiffs must show that defendants maintained their time and leave policies with full awareness that doing so rendered the classification of plaintiffs as FLSA-exempt improper. At least with respect to the disciplinary sanctions, military leave, and court appearance policies, however, plaintiffs offer no evidence tending toward that conclusion. Instead, they argue that those policies are so plainly inconsistent with regulatory requirements for salaried status, that defendants simply must have perceived the conflict.

The force of this contention is undermined significantly by the fact that plaintiffs themselves did not notice the purportedly obvious conflict right away and waited nearly six years after *Garcia* made FLSA applicable to defendants to initiate this action. Moreover, I observe that defendants are correct in their

**5.** Although *Thurston* is an ADEA case, the Supreme Court held in *McLaughlin* that the standard for willfulness is identical under both ADEA and FLSA. 486 U.S. at 133, 108 S.Ct. at 1681.

**6.** As noted above, I did not rest my finding of liability upon defendants' part-day docking policies. I did observe, however, that such policies could have grounded liability. Accordingly, those policies are relevant to a discussion of defendants' willfulness.

statement that court decisions and other authorities released during the period between *Garcia* and the beginning of this action focused exclusively on part-day docking policies and did not highlight potential FLSA problems posed by other time and leave provisions.[7] Thus, while the illegality of classifying plaintiffs as FLSA-exempt while subjecting them to docking for discipline, military leave, and court appearances may have been legally "obvious" from a reading of the 29 C.F.R. § 541.118, as a matter of fact, it does not seem to have been widely recognized during the time period here at issue.

■ As for the fact that the clash between defendants' time and leave polices and the DOL requirements for salaried status was legally obvious, that alone is not sufficient to establish defendants' willfulness. Clearly, it demonstrates that defendants lacked a reasonable basis to believe that their conduct conformed to the requirements of the law. Under the *McLaughlin* standard, however, the mere fact that a defendant acts unreasonably will not support a finding that it was willful. 486 U.S. at 135 n. 13, 108 S.Ct. at 1682 n. 13. *See also Burgess v. Catawba County*, 805 F.Supp. 341, 351 (W.D.N.C.1992) ("one's conduct [in violating FLSA] may be lacking in good faith and reasonable grounds without necessarily being with knowledge or reckless disregard."); *Wyland v. Dist. of Columbia Gov't*, 728 F.Supp. 35, 37 (D.D.C.1990). Accordingly, in the absence of any evidence that defendants actually perceived the illegality of maintaining their disciplinary sanctions, military leave, and court appearance policies, I cannot label the FLSA violations stemming from those policies any worse than negligent.

7. Indeed, in November 1991, a Judge of this Court found that a pending DOL rule-making proposing to eliminate part-day docking as a bar to salaried status had the potential to moot entirely a case in which a group of New York City employees challenged their classification as FLSA-exempt based on the time and leave policies maintained by their employers. *William P. Kelly, et al. v. City of New York, et ano.*, 91 Civ. 2567 (S.D.N.Y.) (Memorandum Endorsed Order of November 12, 1991).

8. The Letter Ruling, appended to May 7, 1993 Affidavit of Howard Green states:

■ With respect to defendants' policies relating to part-day docking, plaintiffs have submitted evidence that defendants were actually aware that such policies presented a potential FLSA problem. Indeed, defendants themselves concede as much. Defendants argue, however, that uncertainty in the law prevented them from knowing that their part-day docking policies brought them out of compliance with FLSA. They claim they understood that so long as employees did not regularly suffer salary deductions pursuant to part-day docking policies, such policies did not preclude an employer from classifying employees as FLSA-exempt.

The genesis of defendants' understanding was a January 15, 1986 Letter Ruling issued by DOL to a county with time and leave policies similar to those maintained by defendants. The question addressed by the letter was whether docking the pay of an employee who missed part of a work day due to illness and had used up all his sick leave was inconsistent with classifying that employee as salaried. DOL answered the question in the affirmative. *The Deputy Administrator* added, however, that unless an employee had suffered "regular and recurring deductions [from salary]," he or she would not lose salaried status, except for the week the docking occurred.[8] Motivated by this statement, defendants researched payroll records for City managerial employees to see if any had been docked pay for personal absences of less than one day. Finding no such instances, defendants concluded that the managers could be classified as FLSA-exempt.

Beginning in mid–1987, federal courts around the country began issuing decisions on the question of whether the existence of a

> Where an occasional deduction that is not permitted by section 541.118 is made from the salary of an otherwise exempt employee, the exemption would be lost in that workweek when the deduction is made. However, if such deductions are regular and recurring, we would question whether the employee is actually paid "on a salary basis" and the exemption may be denied in all workweeks in which it is claimed, including those weeks when no deductions are made.

policy providing for deductions from pay for partial-day absences was enough to keep subject employees from salaried status, or whether actual deductions were required. The first such decision was reported in May 1987, *Knecht v. City of Redwood City,* 683 F.Supp. 1307 (N.D.Cal.1987) (actual pay deduction not required), and others soon followed. *See Harris v. District of Columbia,* 709 F.Supp. 238 (D.D.C.1989) (refusing to rely upon "impermissible deductions [which are] less frequent than occasional"); *Banks v. City of North Little Rock,* 708 F.Supp. 1023, 1026 (E.D.Ark.1988) (actual pay deduction not required); *Hawks v. City of Newport News, Va.,* 707 F.Supp. 212, 215 (E.D.Va. 1988) (same); *Persons v. City of Gresham, Or.,* 704 F.Supp. 191 (D.Or.1988) (same); *District of Columbia Nurses' Ass'n v. District of Columbia,* C.A. 87–1675, 1988 WL 156191, at *2 (D.D.C. January 28, 1988) (employees paid on salary basis where deductions made "only in the occasional situation").[9] As is evident from the parentheticals in these citations, the courts were not of one mind on the issue; there was no dominant position in the law. Moreover, no court within the Second Circuit offered any guidance on the question.

In 1990, the first court of appeals opinion on the actual deduction-possible deduction issue was released. The Ninth Circuit, in *Abshire v. County of Kern,* 908 F.2d 483 (9th Cir.1990), *cert. denied,* 498 U.S. 1068, 111 S.Ct. 785, 112 L.Ed.2d 848 (1991), ruled that employees subject to time and leave policies that permitted docking of pay for partial-day absences were not salaried employees, irrespective of whether any actual pay deductions had occurred. Approximately six months later, on January 7, 1991, the Eleventh Circuit issued a contrary decision, holding that salaried status was not destroyed unless actual deductions were made. *Atlanta Professional Firefighters Union v. Atlanta,* 920 F.2d 800 (11th Cir.1991).

On January 22, 1991, the Supreme Court denied *certiorari* in *Abshire,* prompting the Commissioner of the City's Office of Labor Relations to write a memorandum, advising that under the *Abshire* holding, the City's time and leave policies excluded all subject employees from salaried status. The memorandum noted that the City had been concerned about this issue for some time and concluded that unless the City could lobby Congress to get the relevant law changed, the City faced FLSA liability in the event the Ninth Circuit's view became prevailing law.[10] The Commissioner's foresight was evident just one month later, when the Southern District of New York became the first court in the Second Circuit to take note of the actual deduction-possible deduction issue. *See Dole v. Malcolm Pirnie, Inc.,* 758 F.Supp. 899, 903 (S.D.N.Y. Mar. 4, 1991). Though Judge Goettel declined to take a position, he did cite *Abshire* with approval. 758 F.Supp. at 903. Perhaps encouraged by this latter fact, plaintiffs instituted the present action several weeks later.

The appeal of *Malcolm Pirnie* provided the Court of Appeals with its first opportunity to address the actual deduction-possible deduction issue, which it did in its opinion of November 20, 1991.[11] The Court adopted

9. On the confusion in this area of the law, *see generally* 57 Fed.Reg. 37666, 37699 (1992).

10. Plaintiffs cite the Commissioner's memorandum as evidence that defendants knew their managerial employees were not exempt under FLSA. However, it does not support that conclusion. The memorandum merely warned of potential problems for the City should *Abshire* become controlling and advised City officials to consider various solutions. If anything, the memorandum's date—just over two weeks after the Supreme Court's denial of *certiorari* in *Abshire*—bolsters the view that defendants were aggressively monitoring their FLSA situation to assure that they did not run afoul of the law.

11. In fact, in 1990 the Court of Appeals had stated, "[I]f an employee *can be* docked for frac-

tions of a workday missed, then that employee is an hourly, not a salaried, employee." *Whitmore v. Port Auth. of New York & New Jersey,* 907 F.2d 20, 21 (2d Cir.1990) (emphasis added). While this language appears to indicate that actual pay deductions are not required, the case was one in which actual deductions had been made, and there is no indication that the Court meant to consider or decide the actual deduction-possible deduction issue. Indeed, at the point in the *Malcolm Pirnie* opinion where the Court of Appeals explicitly states that actual deductions are not required, the Court cites to *Abshire* and a number of other cases, but not to *Whitmore.* 949 F.2d at 617. *But see Reich v. Malcolm Pirnie, Inc.,* 821 F.Supp. 905, 909 (S.D.N.Y.1993) (hold-

the *Abshire* holding, declaring the Second Circuit's position to be that "an employer that maintains the discretion to reduce an employee's compensation as a result of the employee's hours or the quality of the employee's work may not consider the employee to be paid on a salary basis." *Martin v. Malcolm Pirnie, Inc.*, 949 F.2d 611, 615 (2d Cir.1991), *cert. denied,* ── U.S. ──, 113 S.Ct. 298, 121 L.Ed.2d 222 (1992).[12]

Upon reviewing the events laid out above, it is apparent that defendants did not act with knowledge that their part-day docking policies were contrary to law—*i.e.*, willfully—prior to November 20, 1991, when the Second Circuit Court of Appeals announced its opinion in *Malcolm Pirnie.*[13] Until *Malcolm Pirnie,* there was no controlling law in this Circuit on the question of whether merely maintaining such policies, as opposed to enforcing them on a regular basis, could breed FLSA liability. Moreover, other courts that considered the issue prior to the Second Circuit had split so as to create uncertainty in the law, and the January 1986 letter ruling issued by DOL contributed to the confusion. Given all this, defendants cannot be charged with actual knowledge that their conduct was unlawful, and cannot be held willful on that basis. *See Lucero v. Regents of the University of California,* 1993 WL 341287, No. C–91–3999 (N.D.Cal. Aug. 23, 1993); *Westfall v. District of Columbia,* 1991 WL 315127, Nos. 87–2275, 88–1028, and 88–3223 (D.D.C. Sept. 13, 1991).

## II. *Plaintiffs' Entitlement to Liquidated Damages*

■ Section 216(b) of FLSA provides that an employer who fails to pay overtime compensation as required by the statute "shall be liable" to the employees concerned not only for their unpaid overtime wages, but also for "an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). Section 11 of the Portal-to-Portal Act, 29 U.S.C. § 260, permits employers to assert a "good faith" defense to liquidated damages, which if established, permits the Court to award a reduced amount of liquidated damages or deny them entirely. In order to prevail on this defense, "the employer must show (1) subjective good faith and (2) objectively reasonable grounds for believing that he was acting in compliance with the provisions of the FLSA." *Soler v. G & U, Inc.,* 628 F.Supp. 720, 724 (S.D.N.Y.1986); 29 C.F.R. § 790.22(b). The employer bears the burden of establishing both of these elements to the satisfaction of a reasonable fact-finder. *Wilamowsky,* 833 F.2d at 20. If the employer fails to make the required showing, the court must award the full amount of liquidated damages provided by statute. *Id.* at 19.

■ To demonstrate subjective good faith, the employer must show that it "acted with an 'honest intention to ascertain what [FLSA] requires and to act in accordance with it.' " *Kinney v. District of Columbia,* 994 F.2d 6, 12 (D.C.Cir.1993). In view of the circumstances and events discussed above, I find no issue of fact as to whether defendants' actions met that standard. Without rehashing the evidence previously discussed, it undoubtedly shows that immediately following *Garcia,* defendants began earnest efforts to insure FLSA compliance.

■ Unfortunately, for defendants, I am unable to reach the same conclusion with regard to the reasonableness prong of the good faith defense. "Surely," defendants argue, their "interpretation of the salary basis test to mean that actual deductions rather than potential deductions effect [sic] salary

---

ing that Court of Appeals' holding in *Malcolm Pirnie* with respect to necessity of actual deductions was not novel).

12. On August 19, 1992, the Department of Labor effectively overruled *Abshire* and *Malcolm Pirnie,* by adopting 29 C.F.R. 541.5d, which allows employees of a public agency to qualify for exemption from FLSA despite docking of pay "for absences for personal reasons or because of illness or injury of less than one work-day." *Id.*

13. Defendants' do not deny contemporaneous awareness of the Court of Appeals' *Malcolm Pirnie* decision. Consequently, they may well have acted willfully after the date that opinion was released. In any event, the question is of no importance. Since the last consent to join this action was filed in June 1993, any violations occurring after the November 1991 issuance of *Malcolm Pirnie* would fit within a two year statute of limitations for all plaintiffs in this action.

status was 'objectively reasonable,' when four Courts of Appeals have reached the same conclusion." Defendants Memorandum of Law Concerning Certain Damages Issues at 16. Additionally, defendants contend, it was reasonable for them to maintain their position in reliance upon DOL letter rulings and upon oral consultations with DOL officials.

There is logic in these arguments, and if defendants' liability here were predicated solely on their part-day docking policies, they would perhaps even prevail. However, defendants' liability rests primarily on their policies relating to disciplinary sanctions, military leave, and court appearances. As noted above, those polices are facially inconsistent with the requirements of § 541.118(a), such that no reasonable person reading the regulation could believe the policies were permissible.

Any argument that defendants believed a lack of actual deductions would save them is untenable. For as defendants have acknowledged, during the relevant time period they did not even consider that their military leave, disciplinary sanctions, and court attendance policies might run afoul of the requirements for FLSA exemption. They, therefore, cannot credibly claim to have considered authorities concerning the actual deduction-possible deduction issue in relation to those policies. Consequently, the uncertain state of the law with regard to the actual deduction-partial deduction issue cannot contribute to the defendants' good faith defense. *See Laffey v. Northwest Airlines, Inc.,* 567 F.2d 429, 466 (D.C.Cir.1976), *cert. denied,* 434 U.S. 1086, 98 S.Ct. 1281, 55 L.Ed.2d 792 (1978) ("[L]egal uncertainty, to assist the employer's defense, must pervade and markedly influence the employer's belief; merely that the law is uncertain does not suffice.").

Because defendants are unable to raise an issue of fact as to whether their actions in violation of FLSA were objectively reasonable, I must find that plaintiffs are entitled to liquidated damages as provided in 29 U.S.C. § 216(b).

### III. Calculation of Plaintiffs' Overtime Compensation

Having established that plaintiffs are entitled to receive back overtime pay, it remains to determine how their individual awards should be calculated. Clearly, plaintiffs must receive overtime at a rate of one-and-one-half times their regular hourly rates of pay. 29 U.S.C. § 207. Difficulty arises, however, in ascertaining their regular hourly rates. For although I have held that plaintiffs were hourly employees for purposes of FLSA, in fact, during the time period at issue, plaintiffs were not paid on an hourly basis; rather, their compensation was structured as an annual salary, payable in standard biweekly installments. In order to calculate how much overtime is due plaintiffs under FLSA, plaintiffs' salaries must be converted to hourly rates. 29 C.F.R. § 778.109. The parties, however, dispute the method by which this conversion should be performed.

Plaintiffs and defendants both recognize the general principle that the hourly rate of a salaried employee (for FLSA purposes) is derived by dividing the employee's weekly salary by the number of hours of work for which it was intended to compensate. *See* 29 C.F.R. §§ 778.109, 778.113. Unfortunately, the end of the common ground lies there. Plaintiffs contend that their salaries were intended to compensate for a fixed workweek of 35 hours (40 for plaintiffs in uniformed service) and that their hourly rates, and ultimately their overtime compensation, must be determined using that figure.[14] *See* 29 C.F.R. § 778.113(a). Defendants, on the other hand, maintain that plaintiffs' salaries were not intended to compensate for any fixed number of hours but rather were paid with the understanding that plaintiffs would work however many hours were required to perform their jobs. Accordingly, defendants say, plaintiffs' overtime should be calculated in accordance with the fluctuating workweek method set forth in 29 C.F.R. § 778.114.[15]

---

**14.** Thus for example, a non-uniformed plaintiff earning a salary of $700/week would have an hourly wage of $20/hour ($700 ÷ 35 hours) and an overtime rate of $30/hour ($20/hour × 1.5).

**15.** Under the fluctuating workweek method, an employee's regular weekly compensation is considered to constitute her straight time pay for however many hours she works in any given week. The employee's hourly and overtime rates

■ After due consideration, I am unable to adopt either party's position on this issue. Plaintiffs' position is factually flawed, and defendants, I find, are wrong as a matter of law. Beginning with plaintiffs, at least with respect to the civilian managers, the evidence is clear that those plaintiffs are not compensated on the basis of a fixed workweek of 35 hours.[16] To the contrary, the applicable municipal policies unambiguously provide that plaintiffs must work a *minimum* of 35 hours and, additionally, must work whatever further hours are required to carry out their assigned duties and responsibilities. Operating Procedure No. 20–26, ¶ 3 and Attachment A, ¶ 1.0(B)(1) (HHC employees) [17]; Chancellor's Regulation D–605, §§ 4, 7 (BOE employees) [18]; Personnel Order No. 88/5, §§ 3, 6 (City of New York employees).[19] These policies, issued pursuant to state law by the President of the HHC, the Chancellor of the Board of Education, and the Mayor of New York City, respectively, have the force of a contract between the plaintiffs and their employers and bind both accordingly. *Matter of Taylor v. McGuire*, 100 Misc.2d 834, 420 N.Y.S.2d 248 (N.Y.Sup.Ct.1979), *modified*, 78 A.D.2d 832, 433 N.Y.S.2d 147 (1st Dept.1980), *appeal dismissed*, 53 N.Y.2d 795, 439 N.Y.S.2d 1031, 422 N.E.2d 597 (1981), *appeal denied*, 53 N.Y.2d 609, 442 N.Y.S.2d 1026, 425 N.E.2d 900 (1981).

Plaintiffs' counsel cites to numerous facts and documents tending to show that 35 hours is the "normal" or "regular" workweek for civilian managerial employees. Crediting this evidence as true, however, none of it undermines the essential fact that the terms of the civilian plaintiffs' employment during the relevant time period required them to work more than normal hours when necessary and to do so without additional pay. In light of that fact, plaintiffs' assertion that their salaries were intended to cover a workweek of no more than 35 hours is untenable.

■ Lest defendants begin rejoicing, I am also compelled to reject their view that plaintiffs' back overtime should be awarded in accordance with the fluctuating workweek method of 29 C.F.R. § 778.114. A careful reading of that section reveals that it imposes certain restrictions on the use of the fluctuating workweek, one of which is that the employee must be guaranteed his or her entire weekly stipend even in workweeks "in which a full schedule of hours is not worked."

will thus vary inversely with the number of hours she works in a given week. Moreover, because the employee is deemed to have received straight time pay for all of her hours in her regular paycheck, she need receive only half-time pay as additional compensation for overtime hours in order to provide her with overtime compensation of time-and-a-half. *See* 29 C.F.R. § 778.114(a).

The advantage to defendants of employing the fluctuating workweek method is best seen by positing a hypothetical employee (uniformed) who, in a given week, works 50 hours and receives a salary of $800:

According to plaintiffs, the employee has been compensated only for her regular 40 hour workweek and is owed time-and-a-half compensation for overtime hours 41 through 50. The employee's hourly rate for the week was $20/hour ($800 ÷ 40 hours), so her time-and-a-half rate is $30/hour. For her 10 overtime hours, the employee is owed an additional $300 overtime pay from her employer.

By defendants' calculations, using the fluctuating workweek method, the employee's salary has provided her with straight time pay for each of her 50 hours. Her hourly rate was $16/hour ($800 ÷ 50); thus, for overtime hours 41 through 50, she must be paid at the time-and-a-half rate of $24/hour. The employee has already been paid $16/hour for each of her 50 hours.

Consequently, she is owed only an additional $8/hour for her overtime hours, and the employer's back overtime bill is only $80.

16. With respect to the uniformed plaintiffs, managers employed in the City's Fire and Sanitation Departments, the evidence on this issue is not conclusive. In light of my conclusions below, however, resolution of the issue is unnecessary.

17. Operating Procedure No. 20–26 is in the record as Exhibit A to the May 8, 1993 Declaration of Marilyn Richter in support of Defendants' Motion for Partial Summary Judgment (the 5/8/93 Richter Declaration) and as Exhibit D to the April 30, 1993 Declaration of Joan Stern Kiok in support of Plaintiffs' Motion for Partial Summary Judgment (the 4/30/93 Kiok declaration).

18. Chancellor's Regulation D–605 is in the record as Exhibit B to the 5/8/93 Richter Declaration and as Exhibit E to the 4/30/93 Kick Declaration.

19. Personnel Order No. 88/5 is found in the record as Exhibit C to the 5/8/93 Richter Declaration and as Exhibit C to the 4/30/93 Kick Declaration.

29 C.F.R. § 778.114(c). "Deductions for absences of less than [a] week, whether for illness, personal business, or other reasons, may not be made under this method of compensation." DOL Letter Ruling, dated May 18, 1966.[20]

Defendants' arrangement with plaintiffs did not meet this condition. As detailed in my prior opinion, defendants' time and leave regulations subjected plaintiffs to reductions in pay for working less than a minimum number of hours. See 826 F.Supp. at 741. Consequently, although the employment arrangements between defendants and the non-uniformed plaintiffs satisfied the main requirement for use of the fluctuating workweek method—i.e., plaintiffs' salaries were intended to provide straight time pay for a varying number of hours rather than a fixed workweek—I cannot give the defendants the benefit of § 778.114. To do so would be to sanction a compensation scheme expressly proscribed by the regulation.[21]

■ The rejection of both parties' positions poses a dilemma. Plaintiffs' hourly rates are supposed to be determined by reference to the parties' intent. Yet, I am unable to give effect to the parties' intent because it is contrary to the law. In such a situation, the solution must be to fall back on FLSA's default position, which is to calculate hourly and overtime rates based on a regular workweek consisting of a fixed number of hours. See Burgess, 805 F.Supp. at 348 (noting that the fluctuating workweek is an "exception to the normal requirements of FLSA"). The appropriate numbers in this case appear to be 35 hours per week for the civilian plaintiffs and 40 hours for the uniformed plaintiffs. Those were the hours

used by defendants in setting plaintiffs' weekly schedules. See December 7, 1993 Declaration of Joan Stern Kiok in Support of Plaintiffs' Position on Disputed Damages Issues (12/7/93 Kiok Declaration) ¶ 3(a) and Exh. G. They were also the hours reflected on plaintiffs' paystubs. See 12/7/93 Kiok Declaration ¶ 3(d) and Exh. J. Accordingly, plaintiffs' regular hourly rates for purposes of computing their back overtime pay awards shall be divined by dividing their salaries during the time period at issue by either 35 or 40 hours, depending on the individual's civilian or uniformed status. Plaintiffs shall be compensated at time-and-one-half the rate thereby determined for each overtime hour worked—i.e., those over forty in any single week. They shall be considered to have received no compensation for such hours thus far.

### IV. Straight Time Pay for Hours 36 through 40

■ The final question concerns the amount of compensation, if any, due the civilian plaintiffs for hours 36 through 40 in weeks where they worked more than 40 hours ("hours 36 through 40").[22] Plaintiffs contend that these hours should be compensated with straight time pay. Defendants argue that no additional compensation is due.

Under FLSA, employees must receive straight time pay for all straight time hours worked during weeks in which the employee works overtime. See 29 C.F.R §§ 778.315 ("[E]xtra compensation for ... overtime hours ... cannot be said to have been paid to an employee unless all the straight time compensation due him ... has been paid"), 778.317 ("Unless the employee is first paid ... for each non-overtime hour worked, ...

---

20. The Letter Ruling is appended to Plaintiffs' Brief in Support of Their Position on Liquidated Damages and Time and One-Half.

21. Defendants cite a number of cases in which the fluctuating workweek method of § 778.114 was applied retroactively to calculate wrongfully withheld overtime pay. Condo v. Sysco Corp., 1 F.3d 599 (7th Cir.1993), cert. denied, —— U.S. ——, 114 S.Ct. 1051, 127 L.Ed.2d 373 (1994); Martin v. Tango's Restaurant, Inc., 969 F.2d 1319 (1st Cir.1992); Blackmon v. Brookshire Grocery Co., 835 F.2d 1135 (5th Cir.1988); Martin v. David T. Saunders Const. Co., Inc., 813 F.Supp.

893 (D.Mass.1992); Petrlik v. Community Realty Co., 347 F.Supp. 638 (D.Md.1972). Of these cases, only Martin v. David T. Saunders applied § 778.114 while at the same time acknowledging that the employees at issue were subject to salary deductions for brief absences from work. The ruling of that case seems clearly contrary to the regulation, and I decline to follow it.

22. This issue does not arise with respect to the uniformed plaintiffs because there is no dispute that those individuals were compensated for 40 hours each week as a matter of course.

payment purportedly for overtime hours is not in fact an overtime payment"). Thus, if, as plaintiffs claim, they had not been paid for hours 36 through 40, they would be entitled to receive straight time pay for those hours as part of the relief awarded today. I have already found, however, that a condition of plaintiffs' employment was that their salaries were intended to provide straight time pay for all the hours worked in a given week. This arrangement was an impermissible means of structuring overtime compensation. But statutorily sufficient overtime having been provided for above, nothing bars enforcement of the arrangement as a scheme for straight time pay. Accordingly, based on the express terms of the civilian plaintiffs' employment, I find that they have received all the straight time pay they are owed and need not be awarded any more today.

## Conclusion

To summarize, defendants' FLSA violations, while not willful, were unreasonable. Accordingly, a two year statute of limitations applies to plaintiffs' claims, and plaintiffs are entitled to the full measure of liquidated damages provided under 29 U.S.C. § 216(b). As compensatory damages, plaintiffs' shall receive back overtime pay, calculated as provided herein, but shall not receive back straight time pay.