William C. McDONNELL; Robert J. Warsocki; Michael Dineen; Don E. Brunken; Verne Beers, Plaintiffs–Appellees,

v.

CITY OF OMAHA, NEBRASKA, Defendant–Appellant.

National Institute of Municipal Law Officers; Nebraska League of Municipalities; Minnesota League of Municipalities; National League of Cities; National Association of County Officers; United States Conference of Mayors; National Public Employer Labor Relations Association; International Personnel Management Association, Amici Curiae.

No. 92–3073.

United States Court of Appeals, Eighth Circuit.

Submitted March 15, 1993.

Decided July 2, 1993.

Rehearing and Suggestion for Rehearing En Banc Denied Sept. 3, 1993.

**294**

Thomas O. Mumgaard of Omaha, NE (argued), (Kent N. Whinnery on the brief) for defendant-appellant.

John Fahey of Omaha, NE (argued), for plaintiffs-appellees.

Before JOHN R. GIBSON, Circuit Judge, BRIGHT, Senior Circuit Judge, and WOLLMAN, Circuit Judge.

JOHN R. GIBSON, Circuit Judge.

The City of Omaha, Nebraska, appeals from summary judgment entered against it on claims filed by William C. McDonnell, Robert J. Warsocki, Michael Dineen, Don E. Brunken, and Verne Beers, all assistant fire chiefs of the Omaha Fire Division. The chiefs sought a declaratory judgment that they were entitled to overtime wage benefits specified in sections 1–19 of the Fair Labor Standards Act. 29 U.S.C. §§ 201–219 (1988

and Supp. III 1991). The City contended that the chiefs were not entitled to these overtime benefits because the chiefs were employed in an executive or administrative capacity, and therefore, exempt from the Act's overtime provisions under 29 U.S.C. § 213(a)(1). The district court rejected this argument, applying regulations which establish a duties and salary test to determine whether an employee is a bona fide executive. See 29 C.F.R. § 541.1(a)–(f) (1991).[1] The district court concluded that the City failed to meet the salary test because the chiefs' pay was subject to reduction for absences of less than a day for personal reasons, sickness, or disability. On appeal, the City argues that the district court incorrectly applied the salary test, and that the mere possibility of salary reduction is insufficient to prevent an employee from being a salaried executive. We reverse and remand for entry of judgment in favor of the City.

In general, the FLSA requires employers to pay overtime compensation for hours worked in excess of a 40–hour work week. See 29 U.S.C. § 207. The FLSA, however, exempts from overtime pay provisions "any employee employed in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1). An employee may qualify for the executive exemption if the employee meets both the "duties" and "salary" requirements set forth in 29 C.F.R. § 541.1(a)–(f). The regulations define a "bona fide executive" as an employee with supervisory duties who is paid on a salaried basis. Id. The test for whether an employee is paid on "a salary basis" is set out at 29 C.F.R. § 541.118(a) (1991):

> An employee will be considered to be paid 'on a salary basis' within the meaning of the regulations if under his employment agreement he regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of his compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed. Subject to the exceptions provided below, the employee must receive his full salary for any week in which he per-

---

1. The district court applied the 1991 version of the regulations.

forms any work without regard to the number of days or hours worked.

The primary function of assistant fire chief is to serve as the administrative and supervisory head of the fire division. The chiefs supervise between 10 and 200 individuals and participate in hiring, firing, and promotional decisions. The chiefs admit the supervisory nature of their duties.

The chiefs claim that they do not qualify as bona fide executives because they are not paid on a salaried basis. The city pays the chiefs (on a bi-weekly basis) an annual salary of $56,114 or more. The City has determined that a 28–day work cycle is conducive to the operational needs of the fire department. The chiefs claim that anytime they are required to work in excess of 212 hours within a given 28–day work cycle, they are entitled to overtime compensation under the FLSA. The basis for the chiefs' claim is contained in the following passage from McDonnell's affidavit:

> When Plaintiffs or other members of the Fire Division are absent from work for less than a day, the hours they are absent are subject to deduction from their wages unless the employees are able to use annual leave, sick leave or other leave with pay entitlement (e.g., "funeral leave"). If, for example, the employee absents himself from work, for less than a day, to handle personal affairs, the amount away from the job would be subject to wage deduction. This is the policy of the City of Omaha and has been the policy during the period relevant to this cause of action.

Both sides filed summary judgment motions. The district court looked to the FLSA regulations, and concluded that the City's scheme of compensation violated the salary basis test set forth in 29 C.F.R. § 541.118(a). *McDonnell v. City of Omaha*, No. CV90-0-17, slip op. at 3 (D.Neb. June 17, 1991). The district court relied on a 1986 Department of Labor letter ruling which stated that salary deductions "for absences of less than a day's duration for personal reasons, or for sickness

or disability, would not be in accordance with section 541.118(a)(2) and (3)," and on a Ninth Circuit decision, *Abshire v. County of Kern*, 908 F.2d 483, 486–90 (9th Cir.1990), *cert. denied*, 498 U.S. 1068, 111 S.Ct. 785, 112 L.Ed.2d 848 (1991), ruling that a similar pay policy was inconsistent with salaried status. *Id.* The district court granted partial summary judgment in favor of the chiefs.

The parties then tried the issue of damages on stipulated facts. The district court first held that a new interim regulation promulgated on September 6, 1991, was not retroactive because it was substantive in nature and designed to stem any accrual of "additional" liability to state and local governments. *McDonnell v. City of Omaha*, No. CV90-0-17, slip op. at 3 (D.Neb. Aug. 11, 1992). The regulation provided that deductions from accrued personal leave and sick leave for absences of less than one day do not preclude an employee from being considered a bona fide executive. 56 Fed.Reg. 45,826 (Sept. 6, 1991). On the issue of liquidated damages, the court accepted a stipulation that the assistant chiefs never actually lost pay as a result of their absences for less than a day because the chiefs (like other city employees) could use their accumulated paid leave to cover these absences. The district court nevertheless awarded backpay and liquidated damages, and the City appeals.

The City argues that the district court incorrectly applied the salary test, and that the mere possibility of deductions from pay for short absences when an employee lacks accumulated paid leave is insufficient to prevent an employee from being considered a salaried executive. The City further argues that the district court misconstrued a deduction of compensatory benefits as a deduction against salary, and that public policy requires reversal.[2]

 Exemptions to the FLSA must be narrowly construed in order to further Congress' goal of providing broad federal employment protection. *Mitchell v. Lublin, McGaughy & Assoc.*, 358 U.S. 207, 211, 79

---

2. The National League of Cities, the National Association of County Officers, the United States Conference of Mayors, the National Public Employer Labor Relations Association, and the International Personnel Management Association filed an amici curiae brief in support of these arguments.

S.Ct. 260, 263–64, 3 L.Ed.2d 243 (1959); *Abshire*, 908 F.2d at 485. Employers have the burden of proving that the exemption applies, and they must demonstrate that their employees fit "plainly and unmistakably within [the exemption's] terms and spirit." *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392, 80 S.Ct. 453, 456, 4 L.Ed.2d 393 (1960). We review the district court's grant of summary judgment de novo to determine whether the record, when viewed in the light most favorable to the non-moving party, shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

The City first argues that an employee should not lose exempt status merely because the employee may lose pay for absences from work of less than one day. The chiefs urge us to reject the City's argument because the City failed to present any evidence that it paid the chiefs on a salary basis. The chiefs point out that the record before the district court was quite limited, and that it contained no evidence that the chiefs did not suffer a loss of pay until the parties filed stipulations after the court's original order granting summary judgment.

The City filed an affidavit in the district court stating that it paid each chief an annual salary of $56,114 or more. The chiefs filed an affidavit stating that when they were absent from work for less than a day, their compensation was "subject to deduction ... unless [they] are able to use annual leave, sick leave, or other leave with pay entitlement." The regulation specifically defines a salaried employee as one whose compensation "is not subject to reduction because of variations in the quality or quantity of the work performed." 29 C.F.R. § 541.118(a). The evidence in the record establishes that the City paid the chiefs a predetermined amount, and this amount was not reduced for part days missed from work *unless* the employee had no accumulated paid leave time. For the reasons more fully discussed below,

we do not believe that a contingent deduction in pay defeats salaried status. The affidavit filed by the chiefs adds a contingency that was in the record before the district court entered partial summary judgment. Moreover, the stipulation that the chiefs suffered no actual loss of pay was presented to the district court before it entered final judgment, and is part of the district court record. Fed.R.App.P. 10(a).

In interpreting the salary basis test, the district court followed the Ninth Circuit's reasoning in *Abshire*, 908 F.2d at 483. In *Abshire*, the Ninth Circuit reversed the district court's holding that county battalion fire chiefs were bona fide executives exempt from the overtime provisions of the Act, ruling that the fire chiefs were not salaried employees because their pay was subject to reduction for absences of less than a day when they had no accrued or compensatory leave. *Id.* at 484, 486. Reasoning that pay is either "fixed and immutable, and not subject to such deductions, or it is contingent," the court held that employees whose pay could be reduced for absences are not salaried, even if the employer has not actually made any deductions.[3] *Id.* at 487. The Second Circuit and the D.C. Circuit followed *Abshire* in *Martin v. Malcolm Pirnie, Inc.*, 949 F.2d 611, 617 (2d Cir.1991), *cert. denied*, —— U.S. ——, 113 S.Ct. 298, 121 L.Ed.2d 222 (1992), and in *Kinney v. District of Columbia*, 994 F.2d 6 (D.C.Cir.1993). The Sixth Circuit similarly followed this line of reasoning from *Abshire* in *Michigan Association of Governmental Employees v. Michigan Department of Corrections*, 992 F.2d 82 (6th Cir.1993) (per curiam), although it concluded that the case was distinguishable on its facts. *Id.* at 85–86.

Although the City's pay system is similar to that in *Abshire*, the systems are factually distinguishable. In *Abshire*, the county paid battalion chiefs overtime pay for every tenth of an hour they worked beyond their regularly scheduled work hours, and usual hourly rates for their attendance at training activities outside of their work shifts. 908 F.2d at

---

**3.** Several district courts have similarly held that the possibility of deductions defeats executive status. *See, e.g., Banks v. City of North Little Rock*, 708 F.Supp. 1023, 1025 (E.D.Ark.1988); *Hawks v. City of Newport News*, 707 F.Supp. 212, 215 (E.D.Va.1988); *Persons v. City of Gresham*, 704 F.Supp. 191, 194 (D.Or.1988); *Knecht v. City of Redwood City*, 683 F.Supp. 1307, 1311 (N.D.Cal.1987).

485. This policy alone, the Ninth Circuit observed, is inconsistent with salaried status. *Id.* at 486; *see also Kinney*, 994 F.2d at 12 n. 3 (policy of overtime compensation also inconsistent with salaried status); *Klein v. Rush–Presbyterian–St. Luke's Med. Ctr.*, 990 F.2d 279, 284 (7th Cir.1993) (fact that employee's supervisors were not subject to compensation time policy defeats salaried status). In our view, the overtime compensation policy in *Abshire* severely limits its persuasive weight. The City does not have such an overtime compensation policy here; the chiefs are paid a predetermined amount regardless of hours worked.

The Eleventh and Fifth Circuits have not followed *Abshire*. In *Atlanta Professional Firefighters v. City of Atlanta*, 920 F.2d 800 (11th Cir.1991), the City of Atlanta had an ordinance requiring that the City dock the pay of fire captains if they were late or violated certain rules. *Id.* at 805. The Eleventh Circuit concluded that an actual deduction must be shown before the exemption is lost. *Id.* The court reasoned that because the union presented no evidence that any captain ever suffered a loss in pay, the City met its burden of proving that the captains' pay was not subject to reduction based on the quality or quantity of their work. *Id.* Likewise, the Fifth Circuit in *York v. City of Wichita Falls*, 944 F.2d 236 (5th Cir.1991), considered a pay situation similar to that here, and reversed the district court's order entering summary judgment, concluding that there was a question of fact as to whether the fire captains and battalion chiefs were salaried employees. *Id.* at 242. The court stated that executive status would not necessarily be defeated if the City did not actually take the salary deductions. *Id.* Our holding is consistent with that of these two courts.

The D.C. and Sixth Circuits criticized *Atlanta Professional Firefighters*, concluding that the regulation focuses on whether the employees pay *can be* docked, not whether their pay actually is docked. *See Kinney*, 994 F.2d at 11; *Michigan Ass'n of Gov't Employees*, 992 F.2d at 85–86. We, however,

do not read the "subject to" language of the regulation to mean that a "possible" or "contingent" reduction in salary automatically means that pay is "subject to reduction," and in violation of the salary basis test. The *Abshire* approach does not persuade us. The letter ruling quoted in *Abshire* and relied on by the district court states only that deductions from pay for absences of less than a day are inconsistent with section 541.118. *See* 908 F.2d at 486. The chiefs admit that a salary deduction occurs only if they have no available paid leave time. Thus, any salary deduction is contingent on the chiefs having no available paid leave time. The policy here is leave offsetting leave; there is no salary reduction unless an employee exhausts his leave time. There are other Department of Labor, Wage, and Hour Division letter opinions that relate specifically to public employers and provide guidance. In 1987, the Wage and Hour Division adopted a nonenforcement policy for public employers who use accumulated leave time to offset short absences. The Division stated that an exemption would not be denied to an otherwise exempt public employee whose pay is reduced for short absences because the employee has exhausted his available paid leave. U.S. Department of Labor, Wage, and Hour Division, Letter Ruling of January 9, 1987. With respect to absences for collective bargaining, an employer can require an employee to substitute paid leave for such absences without losing the exemption. U.S. Department of Labor, Wage, and Hour Division, Letter Ruling of July 17, 1989. These letter opinions demonstrate the administrative interpretation of the regulations before us. Moreover, the salary basis test was promulgated long before the FLSA applied to public employees[4] and the Ninth Circuit's strict interpretation of the salary basis test fails to consider the difference between public and private sector employees. Of most relevance are statutory and constitutional provisions that prohibit payment of increased compensation after the services have been rendered, such as Article III, section 19, of the Nebraska Constitution.

4. In 1974, Congress first tried to extend the FLSA to state and local governments, and the Supreme Court declared the law unconstitutional. *National League of Cities v. Usery*, 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976). The

Supreme Court later reversed *Usery* in *Garcia v. San Antonio Metropolitan Transportation Authority*, 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985).

298

The district court for the Eastern District of Virginia also differed with *Abshire* in *Fire Fighters Local 2141 v. City of Alexandria,* 720 F.Supp. 1230 (E.D.Va.1989), *aff'd,* 912 F.2d 463 (4th Cir.1990). In that case, the district court concluded that the docking of accrued compensatory leave time for short absences would not defeat salaried status. *Id.* at 1232. The court reasoned "[w]hile personal leave, sick leave and/or compensatory time may be part of an employee's compensation package, it does not constitute salary." *Id.* The court in that case also relied on the July 17, 1987, Department of Labor letter ruling which we have referred to above which states "that while deductions in salary are not permitted for absences of less than a day, an employer may require an employee to substitute paid leave for such absences without losing the exemption." *Id.* The Virginia district court's reasoning and the letter rulings which we have referred to above are persuasive.

The record before the district court is such that the judgment in favor of the chiefs must be reversed and judgment entered in favor of the City.

We reverse the district court's judgment, and remand with directions that judgment be entered in favor of the City of Omaha.