Peter MERINGOLO, et al., Plaintiffs,

v.

The CITY OF NEW YORK, and the New York City Department of Correction, Defendants.

No. 91 Civ. 7755 (KTD).

United States District Court, S.D. New York.

Nov. 28, 1995.

Bernstein & Lipsett, Washington, DC (Jules Bernstein, Linda Lipsett, of counsel), Garber, Klein & Nelson, Lake Success, NY (Alan M. Nelson, of counsel), for plaintiffs.

Paul A. Crotty, Corporation Counsel of City of New York, New York City (Marilyn Richter, of counsel), for defendants.

## MEMORANDUM & ORDER

KEVIN THOMAS DUFFY, District Judge:

Plaintiffs, who are or were employed as Corrections Captains by Defendants, the City of New York (the "City") and the New York City Department of Correction, (the "DOC"), allege they are entitled to be paid overtime according to the requirements of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.* Plaintiffs seek declaratory judgment, injunctive relief and backpay compensation for the overtime for which they have not been paid since 1988. They allege that Defendants' treatment of Plaintiffs as salaried employees, which relieves Defendants of the obligation to pay Corrections Captains overtime pursuant to FLSA requirements, is improper under the applicable rules and regulations. Plaintiffs have moved

for partial summary judgment on the issue of Defendants' liability.

Defendants have filed a cross-motion for summary judgment. They assert that Plaintiffs are exempt from the overtime requirements of the FLSA pursuant to 29 U.S.C. § 213(a), which establishes an exemption for "bona fide executive, administrative and professional employees." Defendants also assert that even if I find that they have violated the FLSA by failing to pay Plaintiffs overtime, they have acted in good faith to conform with the rulings of the United States Department of Labor (the "DOL") and, therefore, have a complete defense pursuant to the Portal-to-Portal Act, 29 U.S.C. § 259.

Corrections Captains are the first-line supervisors of Correction Officers. Plaintiffs are represented for collective bargaining purposes by the Corrections Captains Association, whose President is Peter Meringolo, the lead Plaintiff in this case.[1] The most recent contract between the Plaintiffs' union and the City covers the period from November 1, 1990 through January 31, 1992, and continues in operation until a new contract is approved. Plaintiffs receive annual salaries under this contract which far exceed the minimum salary requirements necessary to be considered salaried employees. In addition to their base annual salary, Corrections Captains receive overtime or compensatory time, at the individual captain's option, for hours worked beyond their regularly scheduled hours.

This contract also covers the Plaintiffs' benefits and the conditions of employment, including the policies with regard to partial-day absences, absences for jury duty, attendance as a witness in court proceedings, military leave and disciplinary violations.

The issue presented to me on summary judgment requires a determination of whether specific policies of the DOC, with regard to partial-day absences, jury duty, military leave and court appearances as witnesses, and disciplinary violations for rules other than safety rules of major significance, allow for docking of the captains' pay, and, therefore, fail "the salary basis test", which is a test promulgated by the DOL to determine whether employees qualify as "salaried".

Corporation Counsel has made various admissions in their responses to Plaintiffs' Requests for Admissions with regard to DOC disciplinary policies whereby Corrections Captains are subject to fines or suspensions without pay for violations of rules other than safety rules of major significance. Because I must find that based on these admissions, the DOC fails the applicable tests for determining whether an employee is "salaried", partial summary judgment for Plaintiffs is granted.

### Discussion

### I. SUMMARY JUDGMENT STANDARD

 Summary judgment is appropriate only where the moving party demonstrates that there exists no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Id.* A properly asserted summary judgment motion can be defeated by the non-moving party by demonstrating the existence of a material issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2552–54, 91 L.Ed.2d 265 (1986); *Williams v. Smith*, 781 F.2d 319, 323 (2d Cir.1986). To sustain this burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986); *Williams*, 781 F.2d at 323 ("Mere conclusory allegations or denials will not suffice.") In turn, the moving party may discharge its burden by "pointing out to the district court—that there is an absence of evidence to support the non-moving party's case." *Celotex*, 477 U.S. at 325, 106 S.Ct. at 2554. Even where evidence is offered, summary judgment may still be granted if that

---

1. The actual terms of this agreement are set forth in Exhibit 1 to the Yates Declaration. (Def.'s Local Rule 3(g) Statement).

evidence is not significantly probative. *Anderson,* 477 U.S. at 249–50, 106 S.Ct. at 2510–11.

In determining whether a genuine issue of material fact exists, the evidence must be construed and all inferences drawn in favor of the non-moving party. *Cable Science Corp. v. Rochdale Village, Inc.,* 920 F.2d 147, 151 (2d Cir.1990); *Williams,* 781 F.2d at 323. In this case, both sides have moved for summary judgment, and the inquiry may be stated as whether the evidence, and the admitted facts are so one-sided that one party must prevail as a matter of law. *Anderson,* 477 U.S. at 251–52, 106 S.Ct. at 2511–12.

## II. COLLATERAL ESTOPPEL

Plaintiffs urge application of the collateral estoppel doctrine to the question of liability under the FLSA based on Judge Preska's decision in *Yourman v. Dinkins,* 826 F.Supp. 736 (S.D.N.Y.1993). In *Yourman,* Judge Preska granted summary judgment for Plaintiffs, who were employees designated as "managerial" by the New York City Health and Hospitals Corporation and the Board of Education of the City School District of the City of New York, and who sought overtime pay under the FLSA.

In the Second Circuit, a four-part test is used to determine whether collateral estoppel applies:

> (1) the issue in both proceedings must be identical, (2) the issue in the prior proceedings must have been actually litigated and actually decided, (3) there must have been full and fair opportunity for the litigation in the prior proceeding, and (4) the issue previously litigated must have been necessary to support a valid and final judgment on the merits.

*Beck v. Levering,* 947 F.2d 639, 642 (2d Cir. 1991), *cert. denied,* 504 U.S. 909, 112 S.Ct. 1937, 118 L.Ed.2d 544 (1992), *quoting Gelb v. Royal Globe Ins. Co.,* 798 F.2d 38, 44 (2d Cir.1986). Plaintiffs in the case before me

are not identical to the uniformed Plaintiffs in the *Yourman* case. Indeed, in *Yourman,* Judge Preska specifically stated that she was not dealing with the members of the Corrections Department or the Police Department. *Yourman,* 826 F.Supp. at 737, n. 3. *Yourman* concerned managers employed by the Board of Education of the City of New York, the New York City Health and Hospitals Corporation and the City of New York. Plaintiffs in the action before me are uniformed captains in a paramilitary organization and have an employment agreement with the City which resulted from the collective bargaining between Plaintiffs' organized representatives and the City. The issues in this case, therefore, are not identical to those presented in *Yourman* and preclude application of the collateral estoppel doctrine.

## III. FLSA Exemption

Plaintiffs seek overtime compensation under the FLSA which generally requires that employees who work more than forty hours in any given week be paid at a rate not less than one and one-half times their regular pay rate for each hour exceeding forty.[2] The number of hours and the period of time is different for law enforcement officers (including security personnel in correctional institutions), but the applicable principles are the same.[3] However, the FLSA exempts "bona fide executive, administrative, [and] professional" employees from the maximum hours and overtime provisions of the Act. 29 U.S.C. § 213(a). Because the FLSA is a remedial act, its exemptions must be narrowly construed and the employer bears the burden of showing that its employees fall within an exempted provision of the Act. *Martin v. Malcolm Pirnie, Inc.,* 949 F.2d 611, 614 (2d Cir.1991), *cert. denied,* 506 U.S. 905, 113 S.Ct. 298, 121 L.Ed.2d 222 (1992).

### a. History of the "Salary Basis Test"

The FLSA does not define what type of an employee constitutes a "bona fide executive", but provides that these terms be defined and

---

**2.** The FLSA provides: "no employer shall employ any of his employees ... for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above prescribed at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1).

**3.** See 29 U.S.C. § 207(k).

delimited from time to time by the DOL. 29 U.S.C. § 213(a)(1). Pursuant to this grant of authority, the DOL enacted two regulations, which established a "duties test" and a "salary basis test" to determine if an employee qualifies as a "bona fide executive", who is exempt from the FLSA, and for whom the FLSA does not require overtime pay. See 29 C.F.R. §§ 541.1, 541.2, 541.3, 541.118.

The "duties test" concerns whether the nature of the employee's duties are appropriately considered managerial. The salary test first requires a minimum salary of between $155 and $345 per week, depending on the employee's duties. Plaintiffs easily satisfy both the minimum salary and appropriate duties tests. The only question is whether Plaintiffs in this action are properly considered exempt from the FLSA overtime requirements under the more detailed "salary basis test".

■ The traditional "salary basis test" states that "an employee will be considered to be paid on a salary basis within the meaning of the regulations if under his employment agreement he regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of his compensation...." 29 C.F.R. § 541.118(a). The regulation further provides that a salaried employee's pay cannot be "subject to reduction because of variations in the quality or quantity of work performed." Id. Under the traditional salary basis test, an employer cannot claim exemption from the FLSA requirements, and must pay overtime, for employees who are subject to pay reductions for partial-day absences for personal reasons; subject to pay deductions for attendance as a witness, service on jury duty or temporary military leave; subject to pay reductions for violations of disciplinary rules other than safety rules of major significance. 29 C.F.R. § 541.118(a)(2)–(5).

There has been much debate as to the proper application of the salary basis test to public employees and indeed whether the test is applicable to public employees at all. As originally adopted, neither the FLSA nor the DOL's regulations applied to public employees. Congress attempted to extend FLSA coverage to "non-supervisory employees in the public sector" in 1974. 1974 U.S.C.C.A.N. 2811, 2837. However, FLSA coverage was not fully extended to public employees until 1985 when the Supreme Court decided *Garcia v. San Antonio Metro. Transit Authority*, 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985), which overruled *National League of Cities v. Usery*, 426 U.S. 833, 852, 96 S.Ct. 2465, 2474, 49 L.Ed.2d 245 (1976). In *Garcia*, the Court held that the Tenth Amendment did not bar application of the FLSA to state and local governments. *Garcia*, 469 U.S. at 555, 105 S.Ct. at 1020. In response to this decision, Congress amended the FLSA and provided a temporary adjustment period for public employers. Pub.L. No. 99–150, 1985 U.S.C.C.A.N. 787. Congress was silent, however, as to the applicability of the salary basis test to public employees.

Application of the traditional salary basis test to public employees caused immediate difficulties because, as a general rule, principles of public accountability prevent public employers from paying their employees for hours not worked. See *Mueller v. Reich*, 54 F.3d 438, 442 (7th Cir.1995) (stating that Americans generally demand accountability for every hour of pay to civil servants); *Service Employees International Union, Local 312 v. County of San Diego*, ("SEIU"), 35 F.3d 483 (9th Cir.1994), *as amended and superseded on denial of rehearing*, 60 F.3d 1346, 1352 (9th Cir.1995). Public employers cannot pay their employees for any absences from work for personal reasons, regardless of the amount of time missed, or the position of the employee. Public employers, therefore, would always be barred from applying the "bona fide executive" exemption because of the fact that they must, due to principles of accountability, dock their employees' pay or leave balances, for any absences from work.

It seems unlikely that Congress intended the extension of the FLSA to public employees to bring under the Act workers, who in no realistic way, could be considered hourly-wage employees. When Congress first attempted to extend FLSA coverage to public employees in 1974, the committee bill stated "[s]ection 6 of the bill extends minimum wage

and overtime coverage to about 5 million non-supervisory employees in the public sector not ... [then] covered by the Act.... The bill will provide that virtually all non-supervisory government employees will be covered...." 57 Fed.Reg. 37667, citing, H.R.Rep. No. 93–313, p. 27 (1974) U.S.Code Cong. & Admin.News 1974 pp. 2811, 2837. Moreover, in reviewing the congressional intent with regard to this exemption, the DOL found that "it is clear from a plain reading of the FLSA's legislative history in 1974 that Congress intended the section 13(a)(1) exemption be available for public sector employees." 57 Fed.Reg. 37672 (1992). I agree with the DOL that a plain reading of the legislative history leads to the manifest conclusion that Congress did not intend to extend the FLSA to State and local governments so that supervisory personnel were included in the minimum wage and overtime coverage.

Specifically with regard to the partial-day docking rule, the DOL has explained that, since the FLSA was not originally intended to apply to public employees, "the practice of docking public employees' pay for partial-day absences when paid leave was not available was not initially a concern in the administration of section 13(a)(1) of the FLSA." 57 Fed.Reg. 37672. The DOL, therefore, recognized that it was against congressional intent for the requirement of docking for partial-day absences in public employment to eliminate the "bona fide executive" exemption from the FLSA as applied to public employees.

The DOL dragged its heels in response to this realization, but eventually issued an interim regulation in 1991 which addressed the public accountability concerns of public employees and eliminated the docking for partial-day absences limitation from the salary basis test as applied to public employees. This regulation became effective on September 18, 1992 and states in relevant part:

(a) An employee of a public agency who otherwise meets the requirements of § 541.1, 541.2, or 541.3 on the basis that such employee is paid according to a pay system established by statute, ordinance, or regulation, or by a policy or practice established pursuant to principles of public accountability, under which the employee accrues personal leave and sick leave and which requires the public agency employee's pay to be reduced or such employee to be placed on leave without pay for absences for personal reasons or because of illness or injury of less than one work-day when accrued leave is not used by an employee because—

(1) permission for its use has not been sought or has been sought and denied;

(2) accrued leave had been exhausted; or

(3) the employee chooses to use leave without pay.

29 C.F.R. § 541.5d.

According to this promulgation of the salary basis test, a public employer's practice of docking their employees for partial-day absences will not prevent that employer from asserting the "bona fide executive" exemption for salaried employees. Notably, this new regulation applies to the partial-day docking provision only, and says nothing about the disciplinary policies and the jury duty, witness and military leave policies which Plaintiffs allege also prevent the DOC from applying the "bona fide executive" exemption.

**b. Docking for partial-day absences**

■ Plaintiffs allege that the DOC's policy of deducting from leave allowances and pay for absences of less than a day is inconsistent with salaried employee status and, therefore, prevent Defendants from asserting an exemption from paying overtime under the FLSA. (Pl.'s Mem. at 8). Plaintiffs argue that following Judge Preska's decision in *Yourman*, application of 29 C.F.R. § 541.118 dictates that employees who must account for partial-day absences are by definition non-salaried and therefore, entitled to overtime.[4]

4. Plaintiffs salaries are governed by a collective bargaining agreement which provides that Corrections Captains receive overtime or compensatory time, at the individual employee's discretion, at time and one-half, for hours worked beyond their regularly scheduled hours. (Yates Dec. Exh. 1; Executed Contract Art. III, Sec. 1.) However, the fact that these employees receive

Defendants argue that the portion of the salary basis test applicable to partial day docking has been modified by 29 C.F.R. § 541.5d and, therefore, that section should be applied to Plaintiffs. Moreover, Defendants argue that all sections of the salary basis test, as it existed prior to the 1992 DOL amendment, are invalid as applied to public employees because the DOL contemplated application of the provision to the private sector only.

 I must first decide which articulation of the docking for partial-day absences provision of the salary basis test applies. Where, as here, Congress specifically delegated responsibility to define key terms in a statutory scheme to an administrative agency, I review such agency's action to determine if it comports with clear congressional intent. *Chevron, U.S.A. v. Natural Resources Defense Council,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984). However, if the congressional intent is not clear, I can only determine "whether the agency's action is rationally related to the objectives of the statute containing the delegation." *Mueller,* 54 F.3d at 442. The objective of the FLSA has been stated as being "to promote economic justice and security for the lowest paid of our wage earners, to create conditions of employment stability, and to eliminate unfair labor practices in industry." S.Rep. No. 640, 81st Cong., 1st Sess. (1949), reprinted in 1949 U.S.C.C.A.N. 2241.

The legislative history and the DOL interpretations cited above provide persuasive evidence that Congress never intended the extension of the FLSA to prevent State and local governments from asserting the "bona fide executive" exemption, requiring them to pay overtime to clearly supervisory, salaried employees. Congress simply failed to recognize, or concluded that the DOL would quickly address, the fact that the public accountability principles under which State and local governments must operate require public employers to deduct from public employees' salaries for partial-day absences from work.

I hold that the partial-day docking portion of the salary basis test articulated in Section 541.118 as applied to public employees prior to the 1992 DOL amendment is invalid as contrary to congressional intent. *Chevron,* 467 U.S. at 843 and n. 9, 104 S.Ct. at 2782 and n. 9. Although the Second Circuit has not reached a decision on this issue, other courts have reached similar conclusions. *See SEIU,* 60 F.3d at 1353 (9th Cir.1995); *McCloskey v. TBTA,* 903 F.Supp. 558, 566 (S.D.N.Y.1995) (Chin, J.); *Quirk v. Baltimore County, Maryland,* 895 F.Supp. 773, 780 (D.Md.1995); *Jackson v. Commonwealth of Kentucky,* 892 F.Supp. 923, 929 (E.D.Ky. 1995); *McGrath v. City of Philadelphia,* 864 F.Supp. 466, 486 (E.D.Pa.1994).

Section 541.5d conforms with the congressional intent of the proper application of the FLSA and the "bona fide executive" exemption. The new regulation is rationally related to the purposes of the FLSA, and nowhere is the DOL prescribed from making reasonable distinctions between public and private employees. *Mueller,* 54 F.3d at 438. This part of the regulation is, therefore, valid and should be applied to public employees in the future to determine their exempt status as "bona fide executive" employees.

Since I hold that the docking for partial-day absences portion of the salary basis test as applied to Plaintiffs prior to the 1992 amendments was invalid, I do have to not consider whether § 541.5d should be applied retroactively. Plaintiffs cannot recover for the overtime allegedly lost prior the 1992 regulations based on the fact that the DOC maintained a partial-day docking policy.

As already stated, § 541.5d allows the DOC to exercise the "bona fide executive" exemption even though these Plaintiffs' possibly could be docked for partial-day absences. This rule, however, does not apply to the other DOC policies whose enforcement under the traditional salary basis test would preclude Defendants from exercising the exemption. In particular, the regulation does not address the question of salary deductions

---

overtime is not dispositive of whether or not these employees are properly considered salaried. *See Pautlitz v. City of Naperville,* 781 F.Supp. 1368, 1370 (N.D.Ill.1992); *Dole v. Mal-*

· *colm Pirnie, Inc.,* 758 F.Supp. 899, 903 (S.D.N.Y. 1991), rev'd on other grounds, *Martin v. Malcolm Pirnie, Inc.,* 949 F.2d 611 (2d Cir.1991).

for serving on jury duty, appearing as a witness in a court proceeding, taking temporary military leave, and disciplinary violations.

### c. Absences for jury duty, attendance as a witness or temporary military leave

■■■ Plaintiffs also argue that other DOC policies remove them from the status of salaried employees. Plaintiffs claim that they must use leave allowances, be docked pay, or take leave without pay, for personal court appearances and military leave for periods of more than 30 calendar days in any year.[5] The salary basis test provides that deductions from an employee's pay for these situations removes an employee from "salaried status." 29 C.F.R. § 541.118(a)(4).

When the DOL amended the partial-day docking provision of the salary basis test, they considered the regulation in its entirety and determined that no other portion of the provision required amending. 57 Fed.Reg. 37666, 37673. However, the same principles of public accountability which require a public employer to dock an employee for personal partial-day absences, prevent a State or local employer from paying employees for personal court appearances and military duty exceeding 30 days. An employee's appearance at a court proceeding for reasons unrelated to his duties as a public employee clearly should not be subsidized by public funds.

The question of military leave is less obvious. It can be argued that a public employee serving military duty is performing public duties only in a different capacity, and therefore, should receive his regular salary as opposed to the salary he or she receives while serving in the military, without offending principles of public accountability. However, the duties an employee has in his or her capacity as a public servant and in his or her capacity as a member of the military could be quite different and, therefore, justify differences in pay. See McCloskey, 903 F.Supp. at 566.

Public accountability principles impact the military leave and witness provision in the same way as the docking for partial-day absences provision, in that the State and local government can pay employees only for time spent working on the duties involved with their specific governmental body. State and local governments would fail the traditional salary basis test, and, therefore, would have to pay overtime to supervisory personnel, simply because they cannot pay their employees for hours spent not working.

The jury duty, witness and military leave provision is fundamentally flawed as applied to public employees and is against Congress's intent to provide an exemption to FLSA coverage for "bona fide executives." I hold that § 541.118(a)(4) as it currently exists is invalid as it conflicts with congressional intent. See Chevron, 467 U.S. at 843 and n. 9, 104 S.Ct. at 2783 and n. 9; McCloskey, 903 F.Supp. at 566. Plaintiffs are not entitled to overtime under the FLSA because of the fact that they must use leave time, be docked pay, or take leave without pay for personal court appearances and military leave exceeding 30 calendar days.

### d. Disciplinary actions for violations of rules other than safety rules of major significance

■■■ Plaintiffs also allege that they are not properly classified as salaried employees because Defendants maintain disciplinary policies which could result in suspensions without pay, fines or deductions from leave balances, as a penalty for infractions of rules other than safety rules of major significance. The principles of public accountability upon which I relied to strike down the partial-day docking and jury duty, witness and temporary military leave provisions in the traditional salary basis test, do not apply to the disciplinary actions provision, which remains in question. This provision states:

> [p]enalties imposed in good faith for infractions of safety rules of major significance will not effect the employee's salaried status. Safety rules of major significance

---

5. The DOC regulations provide that employees will be granted leave with pay to attend jury duty provided the employee endorses his check for jury duty to the City. (Rule 3.10.220(b); Yates Decl. Ex. 5).

include only those relating to the prevention of serious danger to the plant, or other employees, such as rules prohibiting smoking in explosive plants, oil refineries, and coal mines. 29 C.F.R. § 541.118(a)(5). Therefore, employees who are subject to docking for violations of disciplinary rules other than safety rules of major significance lose their exempt status.

In *SEIU,* the Ninth Circuit held the entire salary basis test as articulated in 29 C.F.R. § 541.118 invalid because it was contrary to the FLSA and against congressional intent. *SEIU,* 60 F.3d at 1353. However, other courts considering the issue have determined the validity of the different parts of the test individually, and refused to hold the test invalid in its entirety. *See Mueller,* 54 F.3d at 443; *Quirk,* 895 F.Supp. at 780; *McCloskey,* 903 F.Supp. at 567. I agree with the decisions in these latter cases that the entire salary basis test should not be declared invalid summarily. Indeed, the DOL's consideration of the entire test in 1992 and its failure to amend the disciplinary provision provides persuasive authority that the disciplinary provisions contained in the original salary basis test can be appropriately applied to public employees. 57 Fed.Reg. 37673 (1992); *see Jackson,* 892 F.Supp. at 927.

The reason for declaring the partial-day docking and jury duty, witness appearance and temporary military provisions invalid as applied to public employees was because these provisions do not adequately take into consideration the fact that State and local governments cannot pay their employees for hours not worked due to principles of public accountability. No issue of public accountability is involved where the question is fines or the forced suspension without pay of an otherwise exempt public employee for what the employer deems sanctionable infractions, because this does not involve the direct expenditure of public funds. *Mueller,* 54 F.3d at 442–43; *McCloskey,* 903 F.Supp. at 567. There is no reason why a public employer in general could not fashion its disciplinary penalties for supervisory personnel to comply with the FLSA, which would require that supervisory personnel not be suspended for less than a week for rules other than for safety rules of major significance. *Mueller,* 54 F.3d at 443.

Therefore, I must proceed with the application of this portion of the salary basis test to these Plaintiffs to determine whether the DOC's disciplinary policies remove these Plaintiffs from exempt status.

The DOC is a paramilitary organization operating under unique circumstances, which require strict adherence to all rules and policies. Every policy promulgated by the DOC has a potential impact on the safety of prisoners and the correction officers themselves. In my estimation, a violation of any rule, no matter how insignificant to a lay person, has the potential of causing a breach in the integrity of the safety of correctional institutions.

However, I am restrained from ruling that the unique circumstances of correctional institutions elevate every disciplinary rule to one of major safety significance by the admissions made by Corporation Counsel. It should be clear that my conclusion that the DOC disciplinary rules, whereby corrections officers maintain the order and safety of correctional institutions, are not safety rules of major significance *results solely from the admissions made by Corporation Counsel.*

In their responses to requests for admissions, Corporation Counsel has stated that Plaintiffs could receive disciplinary penalties, "including suspensions without pay of one or more days and deductions from leave or compensatory time balances", for a variety of infractions including, "insubordination, abuse of sick leave, refusal to report for drug testing, conduct unbecoming, theft of agency property, and misuse of a police vehicle." (Resp. to Req. 3; Pl.'s Statement of Material Facts, Exh. A). Corporation Counsel also has admitted that Corrections Captains could receive "disciplinary penalties for a variety of infractions ... other than [infractions of] safety rules of major significance. (Resp. to Req. No. 6 ¶ 2; Pl.'s Statement of Material Facts, Exh. A). Such concessions decide this issue. *See Hurley v. Oregon,* 27 F.3d 392, 394 (9th Cir.1994); *Klein v. Rush–Presbyterian–St. Luke's Medical Ctr.,* 990 F.2d 279 (7th Cir.1993); *Shockley v. City of Newport News,* 997 F.2d 18 (4th Cir.1993).

The violations for which Corporation Counsel has admitted such pay reductions are available are the exact infractions which proved fatal for the Defendants in *Yourman.* 826 F.Supp. at 739. In *Yourman,* Judge Preska reached the conclusion that the penalties in place for violations of the rules listed above meant that "plaintiffs are subject to penalties for infractions of safety rules not of major significance. A more direct variance by defendants from the DOL regulations defining 'salary basis' is difficult to fathom." *Yourman,* 826 F.Supp. at 741. The fact that Defendants have admitted that Corrections Captains are subject to suspensions without pay for violating the precise rules which Judge Preska ruled were not safety rules of major significance prevents a contrary conclusion.

Attempting to avoid these admissions, Defendants argue that application of the disciplinary provision as stated in the salary basis test would create "an undue burden on defendants by imposing a test for disciplinary penalties, which is wholly irrelevant to, and indeed inconsistent with plaintiffs' duties and responsibilities, and in particular with their duties and responsibilities in the area of constitutional rights." (Def.Mem. at 41). However, the Supreme Court has held that application of the FLSA to public employees does not place an undue burden on State and local governments, and therefore, does not violate the Tenth Amendment. *Garcia,* 469 U.S. at 528, 105 S.Ct. at 1005. Moreover, as stated above, principles of public accountability do not apply to the disciplinary provision of the salary basis test so as to prevent the employer from asserting the "bona fide executive" exemption. Defendants' assertions to the contrary are without merit. (Def.Mem. at 41).

In an effort to further avoid their admissions, Defendants have represented that the violations which may normally result in penalties, fines or suspensions without pay are all discretionary penalties which may be imposed by the Corrections Commissioner pursuant to the DOC Rules and Regulations if the case involves formal disciplinary charges. (Yates Dec. ¶ 22). Such penalties appear to be applicable only to the more serious offenses, which the DOC would classify as safety rules of major significance.

Discretion in imposing penalties also rests with the Captain's Commanding Officer if the case involves Command Discipline, which is a procedure for dispensing relatively small penalties. (Yates Dec. ¶ 22). The penalties for which an employee may be disciplined under command discipline do not include loss of salary, but forfeiture of vacation days, revocation of permission to engage in outside employment, and change of assignment or schedule. (Yates Dec. ¶ 22). Which penalties to impose for particular offenses remains in the discretion of the commanding officers. The decision to be subject to command discipline remains with the employee.

Pre-hearing suspension without pay is not mandated for any type of offense, rather it is an option for serious offenses and may be imposed only by designated high-level officials. The specific offenses for which an employee may be suspended without pay prior to a disciplinary hearing include refusing to perform assigned duties; refusing an order of a supervisor to answer questions directly related to the performance of official duties; exhibiting conduct of such a nature so as to threaten the good order or security of a command or division; being absent without leave for five consecutive days. The last provision allowing for pre-hearing suspension without pay is completely discretionary to the Commissioner. (DOC Directive 9/19/88, Art. II, section B, pp. 2–3; Yates Decl. Exh. 6).

Defendants argue at length that the discretionary nature of these penalties leads to the conclusion that the DOC does not have an express policy whereby otherwise exempt employees are docked pay or suspended without pay for violations of rules other than safety rules of major significance. (Def.Mem. at 29–35). Defendants argue that since no express policy exists whereby Plaintiffs could be subject to pay reductions for violating disciplinary rules other than safety rules of major significance, they cannot be found to have violated the salary basis test.

However, under the case law established in this circuit, "an employer that *maintains the discretion* to reduce an em-

ployee's compensation as a result of the employee's hours or the quality of the employee's work, may not consider the employee to be paid on a salary basis." *Martin v. Malcolm Pirnie, Inc.,* 949 F.2d at 615; *see also, Whitmore v. Port Authority of New York & New Jersey,* 907 F.2d 20, 21 (2d Cir.1990); *Donovan v. Carls Drug Co.,* 703 F.2d 650, 652 (2d Cir.1983); *McCloskey,* 903 F.Supp. at 569. I am aware that the *Malcolm Pirnie* decision relied on *Abshire v. County of Kern,* 908 F.2d 483 (9th Cir.1990), *cert. denied,* 498 U.S. 1068, 111 S.Ct. 785, 112 L.Ed.2d 848 (1991), a Ninth Circuit decision, whose conclusions on this point and others have been called into question by the DOL. (Def.Mem. at 28). I am also familiar with the line of cases in other circuits which require a showing that actual deductions were made from the employees' salary. *See e.g., Barner v. City of Novato,* 17 F.3d 1256, 1262 (9th Cir. 1994); *McDonnell v. City of Omaha,* 999 F.2d 293 (8th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1188, 127 L.Ed.2d 538 (1994); *Atlanta Professional Firefighters Union, Local 134 v. City of Atlanta,* 920 F.2d 800 (11th Cir.1991); *McGrath v. City of Philadelphia,* 864 F.Supp. 466 (E.D.Pa.1994). However, neither the *Malcolm Pirnie* decision nor the *Abshire* decision have been reversed by their respective circuits. Consequently, in this circuit, the test remains whether employees are "subject to" reductions in their salary, and employees are "subject to" reductions if their employer has the *discretion* to reduce their salaries for violations of disciplinary rules other than safety rules of major significance. *Malcolm Pirnie,* 949 F.2d at 615; *Yourman,* 826 F.Supp. at 743–44.

Based on the admissions of Corporation Counsel, I must conclude that Corrections Captains may be subject to suspensions without pay for violations of disciplinary rules other than safety rules of major significance, and, therefore, fail the disciplinary penalties provision of the salary basis test.

### IV. Portal-to-Portal Act Defense

■ Defendants also assert that their continued treatment of Corrections Captains as salaried employees for overtime purposes, after the FLSA was held to apply to public employees in 1985, is entitled to a good faith defense under § 10 of the Portal-to-Portal Act (the "Portal Act"), which provides that

> no employer shall be subject to any liability [under the FLSA] if he pleads and proves that the act or omission complained of was in good faith and in conformity with and in reliance on any written administrative practice or enforcement policy of such agency with respect to the class of employers to which he belonged. 29 U.S.C. § 259 (1988).

The Portal Act defense requires the employer to establish three elements: (1) that its action was taken in reliance on a ruling of the DOL; (2) that it was in conformity with the ruling; (3) that it was done in good faith. *Yourman,* 826 F.Supp. at 746.

■ The City argues that the evaluation of the FLSA overtime provisions made by them in the "Citywide Fair Labor Standards Act Committee," which included consultation with counsel and meetings with DOL officials, is sufficient under the Portal Act to show their good faith reliance on DOL rulings. (Def.Mem. at 44–46). Under the Portal Act, however, such rulings are irrelevant unless connected to a *written* DOL regulation, order, ruling, approval or interpretation. *Id.; see also* 29 C.F.R. § 790.13. Therefore, opinions of counsel or even meetings with the DOL, without a written opinion letter, do not provide the basis for a Portal Act defense.

Moreover, the January 15, 1986 and the January 7, 1987 DOL Letter Rulings, upon which the City relied in assessing their decision to continue treating Corrections Captains as exempt employees, applied only to the docking for partial-day absences provision of the salary basis test. (Green Decl. ¶¶ 9–13). Had I found that Defendants policy of subjecting Corrections Captains to possible salary reduction for partial-day absences failed the salary basis test and precluded them from treating Plaintiffs as salaried employees, Defendants may have had a viable Portal Act defense. However, since these letter rulings do not deal with the disciplinary penalties provision, Defendants cannot invoke them for protection from po-

tential liability under that provision pursuant to the Portal Act.

The City's efforts, therefore, to determine if actual deductions had been made for partial-day absences and to determine the effect of their partial-day absences policy on their ability to treat Corrections Captains as exempt from the FLSA, have no bearing as to whether they conformed in good faith with DOL rulings regarding the disciplinary penalty provision of the salary basis test. For this reason, their Portal-to-Portal Act defense fails, as applied to the particular provision for which they still violate the overtime provision of the FLSA.

### Conclusion

Based solely on the admissions made by Corporation Counsel, I must find that the Defendants fail the "salary basis test" because Correction Captains are subject to disciplinary penalties, including suspensions without pay, for violations of rules other than safety rules of major significance. Plaintiffs' Motion for Partial Summary Judgment on the issue of liability, therefore, is granted.

SO ORDERED.